YELLOW CAB COMPANY and others, Appellants, vs. INDUSTRIAL COMMISSION and another, Respondents.

*December 9, 1932—February 7, 1933.*

For the appellants there were briefs by *Richmond, Jackman, Wilkie & Toebaas* of Madison, and oral argument by *Oscar T. Toebaas.*

For the respondents there was a brief by *Bagley, Spohn, Ross & Stevens* of Madison, attorneys for Hatfield, and the *Attorney General* and *Mortimer Levitan,* assistant attorney general, attorneys for the Industrial Commission, and oral argument by *Mr. Frank A. Ross* and *Mr. Levitan.*

FRITZ, J.  The only question is whether Hatfield, who was regularly employed by the plaintiff, Yellow Cab Company, from 6 p.m. to 5:30 a.m. to attend to its office telephone switch board, and also to load and start taxicabs at the railroad station upon the arrival of certain trains, is entitled to compensation while ill with pneumonia, which he claims he contracted as the result of exposure on February 6, 1931, while engaged in outdoor work at a time when the temperature ranged from 24° to 29° Fahrenheit above zero, and there was a moderate snowfall.  Hatfield felt well when he reported for work at 5:40 p.m.  At 8:30 p.m. he was directed to attend to the unloading, loading, and starting of cabs at the Memorial Union building of the State University at a social function, which continued from 8:45 p.m. to 2:30 a.m.  He wore winter apparel, but had forgotten his overshoes.  *En route* to the Memorial Union building, he spent twelve to fifteen minutes in changing a tire, during which time he had to kneel in the snow; and at the building he worked outdoors on a concrete platform. He was very busy opening doors and moving around.  At the end of half an hour he began to feel chilly all over his

body, and his legs and feet. Those conditions became so much worse that at 10:30 he went home, took off his stockings and shoes, sat near the coal stove, and took some tea, feeling ill and cold; but after twenty minutes he replaced his stockings and shoes, put on overshoes, and returned to his employer's office for work. At 11:15 p.m. he was again sent to work on the outside platform at the Memorial Union building, and continued there until 2:30 a.m. with the exception of half an hour, which he was directed to spend in the building soliciting trade. While doing that he kept on his overcoat but could not get warm. At 2:30 a.m. he returned to his employer's office and at 5:30 a.m. he went home and to bed. During all that time he could not warm up, and he felt his head and chest filling up and becoming sore. Those conditions grew worse, and when a physician was called on the evening of February 9, 1931, he found an abnormal temperature and symptoms of pneumonia. On the following day he sent Hatfield to the hospital because lobar pneumonia was developing. That disease ran its usual course, excepting that on February 19, 1931, Hatfield suffered a thrombosis from the pneumonia in the leg, which interfered with circulation to the extent that a toe became gangrenous and had to be disarticulated at the proximal joint. Expert medical testimony received at the hearing before the commission fully warranted the statement in its memorandum decision that although pneumonia germs are prevalent in the throats and noses of many normal persons, pneumonia does not result unless the germs invade the lungs and germinate there, which occurs from a lowering of the resistance by some cause; that such "lowered resistance may be due, among other things, to exposure, alcoholism, and reduced vitality following an operation;" "that the exposure on the evening in question, following a probable heating of the body while changing the tire, was

the most logical cause of the lowering of the resistance causing the development of the pneumonia;" and also the commission's conclusion that "on the whole record, and considering the time element involved, the pneumonia was caused by the exposure lowering the resistance so that the germs germinated and invaded the lungs." In its formal findings of fact the commission held that "while performing service growing out of and incidental to his employment, applicant contracted pneumonia, resulting in his disability;" and that the employer was liable for compensation under the workmen's compensation act.

A review of the record discloses that in addition to the facts stated in the commission's decision, as briefly indicated above, there was undisputed medical testimony that the incubation period of pneumonia germs is two or three days after the exposure. The attending physician was of the opinion that in this case the exposure occurred by chilling during the night of February 6th, and he found no other cause in the case for the lowering of the resistance and the pneumonia which resulted. Even the physician called by the employer admitted the possibility of that exposure as such cause, but he thought that the symptoms indicated that the disease began before that exposure. The evidence sufficiently sustains the findings and conclusions of the commission; and the entire record warrants the conclusion that Hatfield sustained an "accidental injury . . . growing out of and incidental to the employment." It was a "personal injury accidentally sustained" within the meaning and contemplation of those words as used in sec. 102.03, Stats. 1929, of the workmen's compensation act, because his exposure, while Hatfield was performing services required of him by his employer, was unexpected, unintentional, and without design. As this court said in *Vennen v. New Dells L. Co.* 161 Wis. 370, 374, 154 N. W. 640, and has con-

sistently held ever since, in relation to those words in that section (which was then numbered 2394—3):

"The term 'accidental,' as used in compensation laws, denotes something unusual, unexpected, and undesigned. The nature of it implies that there was an external act or occurrence which caused the personal injury or death of the employee. It contemplates an event not within one's foresight and expectation, resulting in a mishap causing injury to the employee. Such an occurrence may be due to purely accidental causes or it may be due to oversight and negligence."

In special reference to the disease of typhoid fever, which had been contracted by Vennen while he was employed in a lumber camp, and which had resulted in his death, because of which his employer was held liable for compensation, this court said in the *Vennen Case:*

"The fact that deceased became afflicted with typhoid fever while in defendant's service would not, in the sense of the statute, constitute a charge that he sustained an accidental injury, but the allegations go further and state that this typhoid affliction is attributable to the undesigned and unexpected occurrence of the presence of bacteria in the drinking water furnished him by the defendant as an incident to his employment. These facts and circumstances clearly charge that Vennen's sickness was the result of an unintended and unexpected mishap incident to his employment. These allegations fulfil the requirements of the statute that the drinking of the polluted water by the deceased was an accidental occurrence while he was 'performing service growing out of and incidental to his employment.' . . . Diseases caused by accident to employees . . . are injuries within the contemplation of the workmen's compensation act."

During the course of that opinion, *Alloa C. Co. v. Drylie,* [1913] 1 Scots L. T. 167, 4 N. & C. C. A. 899, involving an exposure, which caused pneumonia, is mentioned in this manner:

"Drylie, a workman in a coal pit, through accident was exposed to icy cold water up to his knees and became chilled,

which made him sick, resulting in pneumonia of which he died. Upon the evidence adduced the court found that the pneumonia was caused by the chill and that death resulted from 'injury by accident.' "

Subsequently, in *Bystrom Brothers v. Jacobson*, 162 Wis. 180, 155 N. W. 919, "accidental injury" was held to include an internal muscular strain in lifting, although there was no external mishap or bodily injury. Likewise in *Scott & Howe L. Co. v. Industrial Comm.* 184 Wis. 276, 199 N. W. 159, this court approved another award for compensation for disability sustained because of typhoid fever contracted by an employee in a lumber camp. There was of course no bodily injury and it does not appear from the report of the case that the infection occurred as the result of the use of water, milk, or food furnished by the employer. In connection with the liberal construction and comprehensive meaning which the words "personal injury accidentally sustained" were given in the cases cited above, it is significant that since those cases were decided, and prior to Hatfield's sustaining the accidental injury involved in this action, the legislature, in furtherance of the beneficent purposes of the workmen's compensation act, extended the provisions of that act "so as to include, in addition to accidental injuries, *all other injuries, including occupational diseases,* growing out of and incidental to the employment." See sec. 102.35, Stats. 1929. Furthermore, in 1931 the legislature again enlarged the scope of sec. 102.03, Stats., by providing that the "liability for compensation shall exist . . . for any disability sustained" by an employee. Sec. 5 of ch. 403, Laws of 1931. In that revised provision there are no such limitations as may be deemed implied by the use in the former provisions of such words as "injuries," "personal injury," "accidentally sustained," and "occupational diseases."

On the other hand, in *Ellingson L. Co. v. Industrial Comm.* 168 Wis. 227, 169 N. W. 568, this court said, in

approving an award to a woodsman who had his feet frozen while employed:

"Did the nature of Beaulieu's employment expose him to a hazard from freezing which was substantially increased by reason of the services which he was required to perform? . . . It seems clear that the hazard to which Beaulieu was exposed was one which was incident to and can be fairly traced to his employment as a contributing cause and that he would not have been equally exposed to such a hazard apart from his employment. . . . It is clear that the exposure of Beaulieu to injury by freezing was substantially increased by reason of the nature of the services which he was obliged to render."

All of that is directly applicable in the case at bar. Hatfield, as clearly as Beaulieu, was exposed to a hazard that was incidental and fairly traceable to his employment as a contributing cause, and he would not have been equally exposed to that hazard apart from his employment. Likewise the exposure of Hatfield to the germination of the pneumonia germs, and the resulting pneumonia, was substantially increased by reason of the nature of the services which he was obliged to render on the night in question. His pneumonia, by reason of the germination of those germs as the direct result of his exposure, was a hazard incidental to his employment. The fact that such hazard was also incidental to all similar outdoor activities affords no reason for excluding Hatfield from the benefits of the workmen's compensation act. For, as this court said in *Eagle River B. & S. Co. v. Industrial Comm.* 199 Wis. 192, 225 N. W. 690:

"It makes no difference that the exposure was common to all out-of-door employments in that locality in that kind of weather. The injury grew out of that employment and was incidental to it. It was a hazard of the industry."

In that case this court, in affirming an award for compensation for an injury which was sustained by the freezing of a foot while engaged in an outdoor employment, said:

"The injury is compensable when it results from a hazard incidental to the industry. The injury in the instant case clearly grew out of and was incidental to the employment."

Recently in *Newman v. Industrial Comm.* 203 Wis. 358, 234 N. W. 495, this court, in affirming an award of compensation for the death of an employee by lightning while seeking shelter under trees, sustained a finding by the commission that the risk of injury by lightning had been increased by reason of the employment, and in that connection said: "In death by freezing or sunstroke the conditions under which one is employed may very well contribute materially to his injuries." That was also recognized in *Nebraska Seed Co. v. Industrial Comm.* 206 Wis. 199, 239 N. W. 432, as sufficient to warrant an award in another case of fatal injury to an employee by lightning. Hence in the case at bar it is also sufficient that conditions under which Hatfield was employed at the time of the exposure contributed materially to his injury and substantially increased the risk and hazard thereof.

*By the Court.*—Judgment affirmed.