WALTER MEAD, GUARDIAN OF RALPH MEAD, INCOMPETENT, APPELLEE AND CROSS-APPELLANT, v. MISSOURI VALLEY GRAIN, INC., APPELLANT AND CROSS-APPELLEE.

134 N. W. 2d 243

Filed March 26, 1965. No. 35924.

Pilcher, Howard & Hickman, for appellant.

Betty Peterson Sharp, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

WHITE, C. J.

The Nebraska Workmen's Compensation Court and the district court awarded Ralph Mead, hereinafter referred to as plaintiff, compensation for disability resulting from frozen feet and subsequent amputations. The defendant appeals.

The temperature in Nebraska City on January 28, 1963, varied between 12 degrees below to 7 degrees above zero. Plaintiff was 52 years old and in good health. He went to work at 7 a.m., sealing (coopering) box cars for grain shipment and was dressed warmly, with two pair of socks, engineer boots, and two-buckle overshoes on his feet. The box cars were unprotected, with one or both doors open, were unheated, and the wind blew through them. They were elevated with the cold air circulating above and below the surface on which the plaintiff worked. Plaintiff sealed or coopered eight box cars. This consisted of nailing boards and other material on the doors and required mostly a standing operation by the plaintiff accumulative to many hours of such standing during the day. There were six men on the job, and when they reported, there was objection to working because of the extreme cold. The manager ordered the work done stating that it was pretty cold but there was a shipping order and the cars had to go out. At about 9 a.m., plaintiff's feet started stinging and hurting. He would walk and stomp on them. In the afternoon, they got worse and he continually complained to fellow employees about them. The men could and did warm themselves in the office from time to time, but

the plaintiff did not. Plaintiff had difficulty getting out of the last box car because his feet were stinging and were stiff. The men quit work at 6 p.m. Plaintiff arrived home at 8 p.m., and had walked about half a mile in the intervening period. At home, he undressed, found ice between his boots and overshoes, and his two pair of socks were frozen hard. His feet were frozen, were red and stiff, got redder, and he used kerosene on them. He suffered pain, the pain got worse, and he took aspirin. He did not go to work the next day and stayed at home. He was admitted to the hospital 2 days later, became delirious, and suffered toxinemia. The diagnosis was acute frostbite. The tissues and bones were both frozen. It was apparent from the outset that amputation would be necessary, and treatment was for the purpose of setting a demarcation line. In April, the toes and head of the metatarsal of the right foot were amputated and the left foot was amputated above the ankle. He was in the hospital for 6 months, was fitted with prosthetic devices for both feet, uses crutches to walk, and has a continuing ulcer on the right heel. A blood sugar condition has developed. Mead had a high pain tolerance level. He is a common laborer, his weight-bearing capacity and center of gravity have been affected and interrupted, and his ability to bend, lift, stoop, kneel, or twist has been impaired. He cannot carry loads, and he cannot perform common labor at all. The opinion of the plaintiff's doctor as to causation, which is the only one in the record, is that the freezing occurred during the working hours of January 28, 1963, producing plaintiff's present disability. None of the other workmen on the job January 28, 1963, suffered any freezing.

Defendant contends that plaintiff did not prove that he sustained an accident arising out of and in the course of his employment. The general rule is that injury by freezing is compensable where the employee's exposure is greater than that of the general public in the same locality. Laudenklos v. Department of Roads & Irriga-

tion, 132 Neb. 234, 271 N. W. 790; McNeil v. Omaha Flour Mills Co., 129 Neb. 329, 261 N. W. 694; State ex rel. Nelson v. District Court of Ramsey County, 138 Minn. 260, 164 N. W. 917, L. R. A. 1918F 921; State ex rel. Virginia & Rainy Lake Co. v. District Court of St. Louis County, 138 Minn. 131, 164 N. W. 585, L. R. A. 1918C 116; Yellow Cab Co. v. Industrial Commission, 210 Wis. 460, 246 N. W. 689; Larke v. John Hancock Mutual Life Ins. Co., 90 Conn. 303, 97 A. 320, L. R. A. 1916E 584; Riley v. City of Boise, 54 Idaho 335, 31 P. 2d 968; 99 C. J. S., Workmen's Compensation, § 188, p. 648; 58 Am. Jur., Workmen's Compensation, § 260, p. 760. As the above authorities note, the difficulty arises in the application of this rule to the facts, and there is a diversity of opinion that will support opposite conclusions in many cases such as this one. Factual color matching of cases gives us little help. We are of the opinion that the plaintiff is within the above rule and that his exposure or peril was greater than that of the public generally. We are of the opinion that the plaintiff's exposure was special, peculiar, and greater than that of the general public. He was required to work in open, unprotected, and elevated box cars in temperatures ranging to 12 degrees below zero while standing most of the time at his work, the normal movement and activity in response to low temperatures being limited by the requirements of the job. Nor are we unmindful of the fact that a fair inference from the evidence is that, except for the urgency of the shipping requirements of the employer, the employees would not have been called or required to work. The employees themselves protested, but the employer insisted on the work being performed. The general normal public exposure to outside weather conditions does not reach the special combination of conditions to which the plaintiff was required to be exposed by the particular conditions of this employment. We take judicial notice of the fact that the general public and the community may be exposed to outside temperatures,

but certainly are not generally exposed to a combination of conditions of outside work such as present here.

There is no evidence that general construction work in the community, or work of this type, is generally conducted at the temperatures and under the conditions present in this case. The risk of the cold was common to all outside, but the required conditions of this employment brought a danger and a peculiar aggravated risk which threatened more particularly the employees of defendant, of which plaintiff was one. See, Nelson v. Creamery Package Mfg. Co., 215 Minn. 25, 9 N. W. 2d 320; Riley v. City of Boise, *supra;* State ex rel. Nelson v. District Court of Ramsey County, *supra;* Nikkiczuk v. McArthur, 9 Alberta L. R. 503, 28 Dom. L. R. 279.

Defendant, citing cases, argues that the other employees did not suffer from freezing and that plaintiff's risk was no greater than that of his fellow employees. We reject this defense as it was rejected in the Laudenklos case, *supra.* We point out further that if the plaintiff was peculiarly susceptible to frostbite, this would not be a defense. The law does not penalize the thin skinned.

Defendant, citing cases, argues that plaintiff failed to warm himself from time to time. But, plaintiff violated no instructions and kept diligently on the job. The employer had told him that the box cars had to be coopered in spite of the cold. Now, the employer claims that the plaintiff was negligent in not leaving the job to warm himself, but it is not contended that he willfully exposed himself or was guilty of willful misconduct, which would be a defense. § 48-102, R. R. S. 1943. Nor is it contended that he knew, during the working hours, that his feet were frozen. He is not required to take the precautions which others might have and did take. There is no merit to this contention.

Did the freezing occur during the course of employment? Defendant argues that it could have occurred before plaintiff went to work or in the 2 hours after

work before he discovered the condition. Plaintiff's uncontradicted evidence is that he had been inside the day before; that he had no trouble before going to work; that he walked to the job and his feet were warm; and that the stinging trouble started about 9 a.m. while on the job. The medical testimony as to causation is to the same effect. Defendant's doctor gave no opinion to the contrary. Plaintiff pulled a toenail off the evening of January 28, 1963, and defendant speculates that this could not have happened if the freezing occurred during the working hours. It could have been pulled or torn off because of being frozen to his socks, or as the defendant's doctor testified, "* * * if the toenail came off on this day, that there must have been some trouble with the toenail to start with, a fungus infection, for instance, can loosen the toenail and they can come off for this reason." The fact that he tore his toenail off leads us to no inference that the freezing occurred before work. Defendant argues that he could have frozen his feet in the approximately half hour he was walking outside after work. The evidence shows that he had increasing difficulty during the day, had a stiffening and numbing as he got out of the last box car, and his feet really bothered him as they started to warm up. It would seem unreasonable that he could work all day standing in the box cars, not freeze his feet, and then suddenly freeze them when he started exercising them by walking. The freezing extended into the bone, blackening it, and as the plaintiff's doctor testified, could not be caused by a half-hour exposure. We come to the conclusion that the freezing was in the course of employment and that the evidence would not support a conclusion to the contrary.

On the amount of compensation, the district court took the 100 percent left-foot loss, averaged it with a 60 percent disability finding on the right foot, and awarded 80 percent two-member permanent partial disability under subdivision (3), section 48-121, R. R. S.

1943. If it was a two-member disability only, this was the correct method of computation. Bronson v. City of Fremont, 143 Neb. 281, 9 N. W. 2d 218. Defendant asserts a right-foot loss of use of 25 to 30 percent and the plaintiff cross-appeals for a determination of permanent total disability under subdivision (1), section 48-121, R. R. S. 1943. Where is the dividing line as to which subdivision applies? General disabilities which are the normal, usual, and logical consequence of injuries to specific members are not compensable under subdivision (1), section 48-121, R. R. S. 1943. We have said that it was clearly the intent of the Legislature to fix the amount of the benefits for loss of specific members under subdivision (3), section 48-121, R. R. S. 1943, without regard to the extent of the subsequent disability suffered with respect to the particular work or industry of the employee. Haler v. Gering Bean Co., 163 Neb. 748, 81 N. W. 2d 152; Carlson v. Condon-Kiewit Co., 135 Neb. 587, 283 N. W. 220. But, where an employee has suffered a schedule injury to some particular member or members, and some unusual or extraordinary condition as to other members or any other part of the body has developed, he may be compensated under subdivision (1) or (2) of section 48-121, R. R. S. 1943. Haler v. Gering Bean Co., supra; Ottens v. Western Contracting Co,. 139 Neb. 78, 296 N. W. 431.

In resolving this question, we are posed with the usual conflicts in, and the refined analyses of, the meaning of medical testimony. But, we are aided in this case by many undisputed objective facts and certain inescapable conclusions from the whole evidence.

(1) The plaintiff is a common laborer and is fitted for nothing else. He must walk with crutches, cannot lift weight, and has almost a complete limitation of the ability to twist, stoop, bend, run, climb ladders, or walk upstairs. He loses his balance easily, fatigues quickly, and has lost all general agility to perform the ordinary function of common labor or ordinary co-

ordinated movement. Compare Nordahl v. Erickson, 174 Neb. 204, 116 N. W. 2d 275, and Haler v. Gering Bean Co., *supra,* where industrial total disability was awarded under subdivision (1), section 48-121, R. R. S. 1943, where there was some ability to work remaining after injury to schedule members.

(2) Plaintiff suffers from a hip and back disability involving pain and tension caused from an inability to adjust to the use of the prosthetic devices, the distortion of the sense of balance, and the bodily center of gravity. When he walks with the aid of crutches, it causes him pain.

(3) There is a continuing unhealed painful ulcer on his right heel that has defied treatment.

(4) The bones of his right foot were frozen deeply, gangrene and toxinemia developed, and all of the toes and part of the metatarsal bones of the arch have been amputated resulting in a "cold blue extremity," lack of proper nutrition, impairment of circulation, and an increased danger from exposure to the cold.

(5) An abnormal blood sugar condition accompanying original acidosis and toxinemia is still present and has not cleared up.

(6) Plaintiff has suffered digestive difficulties resulting from stresses he has been subjected to and he has an increased general susceptibility to the cold.

The plaintiff was in good health prior to the freezing with full ability to work, had none of the above pains or disabilities, and had a high pain threshhold.

Plaintiff has lost more than the tape-measured length of the amputated portions of his feet. We shall not indulge in medical speculation as to what the normal, usual, and logical consequences of an amputation alone are. Nor do we accept defendant's attempt to minutely fragmentize and thus destroy the significance of the various resulting general disabilities of the plaintiff. The undisputed import of the injuries to the plaintiff is to destroy the physical functions indispensable to the

performance of his work. It is the combination of the results of both the freezing and the loss of anatomical integrity that has produced a general bodily disability to the whole man. Thus, the plaintiff's disability results from both the freezing injury and the amputations, and from an interrelating combination of the consequences of both. No matter how the medical battle may go as to whether any individual item of disability is a normal or usual consequence of an amputation, we have no doubt that an almost undisputed picture of destruction of the normal body physical function and consequent work disability is not the normal, usual, and logical consequence of partial loss and amputation of specific members.

To so hold would penalize a plaintiff having a general bodily disability resulting from injuries in an accident merely because the origin of said general disabilities is found in a specific member loss compensated for under subdivision (3), section 48-121, R. R. S. 1943.

We hold that the cross-appeal should be sustained and that the plaintiff is entitled to an award for permanent total disability under subdivision (1), section 48-121, R. R. S. 1943.

Defendant asserts error in permitting plaintiff to withdraw his rest and adduce medical testimony as to causation, a subject not covered by any of the previous medical testimony. Defendant's right to adduce controverting or additional testimony was preserved. We find no abuse of the trial court's sound discretion to permit this. The plaintiff's attorney is allowed $500 for services in this court. The judgment of the district court is affirmed as modified.

AFFIRMED AS MODIFIED.