**KOEHRING COMPANY, a corporation,**
**Plaintiff,**

v.

**AMERICAN AUTOMOBILE INSUR-**
**ANCE CO., a corporation,**
**Defendant.**

**No. 61-C-10.**

United States District Court
E. D. Wisconsin.

March 30, 1965.

William A. Denny, Milwaukee, Wis., for plaintiff.

John A. Kluwin, Milwaukee, Wis., for defendant.

GRUBB, District Judge.

Action on a policy of liability insurance. Defendant issued to plaintiff a policy of liability insurance in which defendant agreed to pay on behalf of the insured all sums the insured shall become legally obligated to pay as damages because of injuries to or destruction of property, including loss of use thereof, "caused by accident". It contained the usual provision, requiring the insurer to defend claims covered by the policy even if the suit was groundless, false or fraudulent. It also permitted the insurer to investigate, negotiate and settle any claim or suit as it deemed expedient.

Plaintiff, through its C. S. Johnson division, sold to Ruffridge-Johnson Equipment Company, Inc., two machines for the mixing of cement to be used in road paving. Ruffridge-Johnson Equipment Company, Inc., in turn, sold the ma-

chines to Swanson Truax, Inc. Plaintiff did not manufacture all of the machines. It purchased the mixers and hydraulic rams (which were used to manipulate the mixers) from others. The two machines were incorporated into the central concrete mixing plant maintained by Swanson Truax, Inc. From the beginning these machines did not work properly. After two weeks the heads of the hydraulic rams broke, resulting in damage to the machines and interruption of the paving operations. Plaintiff then sent an engineer, James Johnson, who arrived at the scene of the operations in North Dakota on July 5 or 6, 1959. He found that the heads had pulled out of the cylinders of the hydraulic rams.

C. S. Johnson Company procured new rams and had them installed. James Johnson noticed that the new rams were not strong enough to take care of the operations. C. S. Johnson Company then installed a stronger type of ram. Neither James Johnson, the C. S. Johnson Company, nor the plaintiff made any claim at that time to the defendant that there had been any accident. Subsequently Swanson Truax, Inc. commenced an action in the Minnesota State Court against Ruffridge-Johnson Equipment Co., Inc. It, in turn, filed a third-party complaint against C. S. Johnson Company and Koehring Company.

The complaint in the Minnesota action alleges that the defendant (Ruffridge-Johnson) warranted and represented that the machines were capable of a certain performance; that the plaintiff relied upon the warranties and representations; that the defendant had been notified of the purpose for which the machines were intended; that the plaintiff relied on the skill and judgment of the defendant in supplying equipment reasonably fit for that purpose; that the machines furnished were not of the kind, character or capacity agreed upon; that the plaintiff relied on defendant's warranties and attempted to use the equipment. The complaint is based principally upon alleged breach of warranty and negligence in the design and fabrication of the machines.

It does allege that the mixer motors broke loose from their fastenings and fell from the mixers and that the ram jets used to tilt the mixers broke and became inoperable causing damage. The complaint sounds practically entirely in negligence in design and breach of warranties.

In the third-party complaint Ruffridge-Johnson alleges that it made Swanson Truax's needs known to the C. S. Johnson division of Koehring; that C. S. Johnson offered to design and fabricate a plant to meet those needs; that Ruffridge-Johnson relied on the representations of C. S. Johnson and Koehring that they warranted the plant as fit and proper for Swanson Truax purposes and that they guaranteed the plant for six months or for the first 1500 hours of operation. The third-party complaint states that it is the position of Ruffridge-Johnson that Koehring and C. S. Johnson are liable directly to Swanson Truax if the plant was not fit and proper for Swanson Truax's uses or if there was negligence in the design and fabrication of the plant, resulting in damages for which Swanson Truax may recover.

The complaint and the third-party complaint in the Minnesota litigation were referred to the defendant herein as soon as they were served on Koehring. After the pleadings were referred to the defendant, it refused to defend and denied coverage on the ground that at no time was there any claim of an accident. Plaintiff's counsel made the first report to the defendant in a letter of October 6, 1959 which set forth that the machines broke down, but did not set forth any claim that there was an "accident".

The question presented is this: Was there an accident within the meaning of the insuring clause? It has been held by the Court of Appeals for the Seventh Circuit that an accident occurred within the meaning of a liability policy where the insured, in cleaning the outside walls of a building with acid, splashed acid on the windows causing damage to them. This case was decided under Illinois law. Cross v. Zurich General Accident & Lia-

bility Ins. Co., 184 F.2d 609 (7th Cir. 1950).

The Wisconsin Supreme Court has held that where a theater customer was assaulted by an employee the injury was accidently sustained within such a policy provision because it was an accident so far as the patron was concerned. Fox Wisconsin Corporation v. Century Indemnity Company, 219 Wis. 549, 263 N.W. 567 (1935). The same holding was made in Wisconsin Transportation Company v. Great Lakes Casualty Company, 241 Wis. 523, 6 N.W.2d 708 (1942), where a passenger on a boat was struck by a bottle thrown by an employee of the defendant although that employee had no intention of injuring anyone.

With reference to property damage the Wisconsin Supreme Court, in Meiser v. Aetna Casualty & Surety Company, 8 Wis.2d 233, 98 N.W.2d 919 (1959), held that there was an accident when a plastering contractor splashed plaster on windows and then scratched them trying to remove the plaster.

One would ordinarily think of an accident where a person spilled a glass of water or spilled some plaster or acid. If someone would endeavor to lift an 80-ton piece of machinery with an ordinary automobile tire jack, one would expect the tire jack to collapse or fail. It would be stretching the meaning of the word to call even that an accident. That is substantially what happened here. The rams were not heavy enough or strong enough to do the work indicated and they, therefore, broke.

The loss herein in question is one which one would normally expect to be under products liability coverage rather than accidental injury coverage. The pleadings make it clear that the underlying basic claim was grounded upon negligence in design and manufacture and breach of warranty.

However, this court is bound by the decision of the Wisconsin Supreme Court in the Meiser case, it being a Wisconsin contract of insurance, and by the decision of the Court of Appeals in Cross.

The rams did break. Therefore, the court holds that the loss was "caused by accident" within the meaning of the policy. The plaintiff, upon defendant's refusal to defend it, paid to Swanson Truax the sum of $20,000.00 and, in addition, agreed to take back the defective parts, which it sold at a loss of $10,-755.62. It incurred freight expenses in the sum of $1,810.51 and attorneys' fees in the sum of $707.08 in defending the Minnesota action. This makes a total of $33,273.21 as the amount of plaintiff's loss.

The court adopts the stipulation of facts entered into by the parties as its findings of fact, supplemented by the findings herein set forth, and the conclusions of law are as set forth above, in compliance with the Federal Rules of Civil Procedure.

The clerk is directed to enter a judgment in favor of plaintiff against the defendant in the sum of $33,273.21, together with its taxable costs and disbursements herein.