**KOEHRING COMPANY, a corporation, Plaintiff-Appellee,**

v.

**AMERICAN AUTOMOBILE INSURANCE COMPANY, a corporation, Defendant-Appellant.**

No. 15265.

United States Court of Appeals Seventh Circuit.

Dec. 20, 1965.

John A. Kluwin, James P. Burns, Kluwin, Dunphy, Hankin & Hayes, Milwaukee, Wis., for appellant.

1. Removed to the District Court on diversity grounds.

2. The opinion, which adopts a stipulation of facts entered into by the parties as

William A. Denny, John F. Friedl, Milwaukee, Wis., for appellee.

Before HASTINGS, Chief Judge, and CASTLE and KILEY, Circuit Judges.

CASTLE, Circuit Judge.

Plaintiff-appellee, Koehring Company, a Wisconsin corporation, brought this action [1] against American Automobile Insurance Company, the defendant-appellant, on a policy of liability insurance issued by American. Koehring sought recovery of damages because of American's refusal to defend Koehring in a Minnesota state court action against Koehring as a third-party defendant. Koehring incurred attorneys' fees in connection with and settled the Minnesota action after American had refused to defend on the ground that the claim asserted against its insured, Koehring, was not within the coverage afforded by the policy. The cause was tried to the court which entered judgment for Koehring for the sum of $34,173.21 after filing an opinion [2] incorporating findings of fact and conclusions of law. American appealed.

The comprehensive liability policy issued by American to Koehring contains the following provisions:

"I. Coverages

\* \* \* \* \* \* \*

    D. Property Damage Liability —Except Automobile. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, *caused by accident.* (Emphasis added)

II. Defense, Settlement, Supplementary Payments.

With respect to such insurance as is afforded by this policy, the Company shall:

the court's findings, supplemented by findings contained in the opinion, is reported at 239 F.Supp. 526.

(a) defend (1) any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient. * * * "

The main contested issue presented by American's appeal is whether the claim asserted against Koehring in the Minnesota action involved damages caused by "accident".

The record discloses that Koehring's unincorporated division, the C. S. Johnson Company of Champaign, Illinois, which specialized in the manufacture and sale of concrete batching and mixing equipment, obtained two concrete mixers from Koehring-Waterous, Ltd., a Canadian subsidiary of Koehring, which with certain related equipment were delivered in June of 1959 to Swanson-Truax Company, a Minnesota highway construction contractor. Swanson-Truax had purchased the mixers and related equipment from Ruffridge-Johnson Equipment Company, Koehrings' dealer in Minnesota. The two mixers and the related equipment were to be used with existing equipment previously purchased by Swanson-Truax so as to provide a central mix plant for batching, hauling and placing concrete at the job-site of an interstate highway construction project in North Dakota.

Paving operations commenced on June 15, 1959. Certain difficulties were experienced in the operation and functioning of the central mix plant but there is conflict in the testimony as to whether the malfunctioning was attributable to faulty design of the equipment with resultant failure of the various parts to function in a coordinated manner or was attributable to lack of experience on the part of the contractor's operating personnel. In any event, a more serious disruption of the contractor's work occurred beginning on July 1, 1959, when one of the mixers suddenly toppled over spilling its contents. The hydraulic cylinder ram jets used to tilt the mixer in order to dump the contents had broken. The next day the second mixer broke down in the same manner. In addition, the mounting for the motor on one of the mixers broke and the motor fell off. These breakdowns resulted in a complete shut down of Swanson-Truax's paving operations until repairs were completed and the hydraulic cylinders were replaced several days later with duplicates procured by Koehring's Johnson Company division. These began to fail about a week later. It was then determined that Koehring-Waterous had installed the wrong type of hydraulic cylinders in the mixers—a type of cylinder inadequate for the purpose. Different hydraulic cylinders were then installed and thereafter the mixers functioned without further trouble.

The Minnesota action was brought by Swanson-Truax against Ruffridge-Johnson, Koehring's Minnesota dealer from which Swanson-Truax had purchased the mixers and related equipment. The contractor sought damages allegedly occasioned by breach of warranty and by negligence in the design and fabrication of the mixers and equipment. The complaint specifically alleged, among other things, that the mixer motors broke loose from their fastenings and fell from the mixers and that the hydraulic ram jets used to tilt the mixers broke and became inoperable. Ruffridge-Johnson filed a third-party complaint against Koehring asserting that Koehring was directly liable to Swanson-Truax if Swanson-Truax substantiated the allegations of its complaint.

In the instant action neither the liability of Koehring to Swanson-Truax nor the amount of the damages as reflected by the compromise settlement of Swanson-Truax's claim is questioned. The sole issue is American's liability to Koehring under the provisions of the liability insurance policy. In other words, were the damages sustained by Swanson-Truax "caused by accident"?

Webster's New International Dictionary (2nd Edition, Unabridged) defines the word "accident" as:

"1. Literally, a befalling. a. An event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event * * * ".

The Wisconsin cases construing the term as used in various contexts are in accord. Schneider v. Provident Life Insurance Co., 24 Wis. 28, 30; Yellow Cab Co. v. Industrial Commission, 210 Wis. 460, 463, 246 N.W. 689; Clark v. London & Lancashire Indemnity Co., 21 Wis.2d 268, 124 N.W.2d 29, 98 A.L.R.2d 1037.

■ We think it apparent that the sudden breakdown of the mixers precipitated by the failure of the hydraulic cylinders was an "accident". The incident meets all of the tests normally determinative of whether an occurrence is an accident. And, the breakdown was the cause of the damages sustained by Swanson-Truax, the liability for which was asserted against Koehring. It is of no import that the liability asserted by Swanson-Truax was predicated upon breach of warranty and negligence. The presence of either of these factors does not necessarily negate that an occurrence is an accident. Cf. Cross v. Zurich General Accident & Liability Ins. Co., 7 Cir., 184 F.2d 609; City of Aurora, Colorado v. Trinity Universal Insurance Company, 10 Cir., 326 F.2d 905, 906. Nor would the absence of either factor be of controlling effect as to whether the instant occurrence was an accident, although material on the question of Koehring's liability for the ensuing damages.

The factual allegations of Swanson-Truax's complaint gave notice to American that the contractor's claim involved damages caused by accident and raised a duty in American to defend Koehring and to pay, within the policy limits, any such damages for which liability was ultimately established. American did neither.

American distinguishes between the phrase "caused by accident" here involved and the phrase "accidentally sustained",

as each are used in insurance policy provisions, as reflecting the difference between cause and result, and requiring, in the case of the instant policy clause, exclusion from policy coverage if the act of the insured causing the injury or damage is voluntary or intentional. In this connection, American argues that the breakdown of the hydraulic cylinders was the natural and probable consequence of Koehring's failure, through its subsidiary Koehring-Waterous, to install cylinders of adequate design and characteristics, a consequence with respect to which Koehring is chargeable with knowledge, and contends that the breakdown was not accidental because it resulted from a voluntary and intentional act on Koehring's part—the installation of the cylinders it elected to install. But the foresight with which Koehring may be legally chargeable is not the same thing as voluntary, intentional or foreseen infliction of damage. It is obvious that neither Koehring, its subsidiary, its Johnson division, nor its Minnesota dealer, expected or intended the cylinders to fail. Moreover, the direct cause of the damage was the breakdown of the mixer cylinders and resultant shut down of the plant. American ignores this and approaches the issue involved from the standpoint of not what caused the damage but of what act or omission of its insured caused the "accident" which caused the damage and relies upon the elements of intent and voluntariness it finds present in this antecedent and more remote factor to negate the existence of an accident. We find nothing in the Wisconsin and other decisions analyzed by American which supports its contentions that the damages here involved were not "caused by accident" within the meaning of its policy provision.

■■ We think it evident that in the context in which it is used in the policy provision here involved that the word "accident" refers to the event or occurrence which produced the damages and does not require that the conduct of the insured upon which the liability for the damages is predicated—here the inten-

tional installation of a certain type of hydraulic cylinder which happened to prove inadequate—be "accidental" in the sense of an involuntary or unintentional act of the insured. But if there be ambiguity or uncertainty in this respect it is to be resolved in favor of coverage.

We conclude that the District Court did not err in the conclusion it reached. The judgment order of the District Court is therefore affirmed.

Affirmed.