IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

LECHER-ZAPATA V. MWE SERVICES, INC.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JOHN LECHER-ZAPATA, APPELLANT,

V.

MWE SERVICES, INC., DOING BUSINESS AS MIDWEST DEMOLITION COMPANY,
AND QBE NORTH AMERICA INSURANCE, APPELLEES.

Filed June 8, 2021.    No. A-20-665.

Appeal from the Workers' Compensation Court: JOHN R. HOFFERT, Judge. Affirmed.

John Lecher-Zapata, pro se.

Tiernan T. Siems, of Erickson & Sederstrom, P.C., for appellees.

RIEDMANN, ARTERBURN, and WELCH, Judges.

WELCH, Judge.

INTRODUCTION

John Lecher-Zapata appeals from the Workers' Compensation Court's dismissal of his case finding he did not prove his health condition was causally related to his employment with MWE Services, Inc. (MWE). For the following reasons, we affirm.

STATEMENT OF FACTS

Although the workers' compensation court noted this case has a somewhat protracted history, the record before us on appeal is limited to items related to Lecher-Zapata's third amended complaint filed in August 2019. In his third amended complaint, Lecher-Zapata, a pro se plaintiff, alleged that (1) on or about January 1, 2005, through June 2013, he sustained injuries related to his employment with MWE resulting in carpel tunnel and a "lung injury" and (2) he suffered from intentional infliction of emotional distress resulting from the requested 5-year delay and denial of

his medical treatment by QBE North America Insurance (QBE). In November 2019, MWE and QBE filed an answer denying Lecher-Zapata's allegations and asserting affirmative defenses.

At trial, the parties offered a stipulated agreement which provided, among other things, that (1) Lecher-Zapata was an employee of MWE since before October 1, 2011, until November 24, 2012; (2) he received wages as reported on his W-2; (3) MWE was insured by QBE continuously from July 11, 2011, through October 1, 2013, and Lecher-Zapata "was a covered employee under the QBE policy" during Lecher-Zapata's employment with MWE; (4) he has Chronic Obstructive Pulmonary Disease (COPD); and (5) conditions related to COPD (such as vision and respiratory conditions) were not at issue. An insurance agent and various employees of MWE testified that Lecher-Zapata suffered from poor health and was exposed to dangerous work conditions that could have impacted his health.

Evidence adduced at trial also included exhibits consisting of Lecher-Zapata's medical records from Dr. Ritoo Jain, Lecher-Zapata's primary care physician, and Dr. Ryan Martin, a pulmonologist. In July 2012, Dr. Jain noted that Lecher-Zapata presented with a mostly dry cough, but by December 2012, the cough had been ongoing and Lecher-Zapata had been experiencing frequent episodes of bronchitis. Dr. Jain noted that Lecher-Zapata did not have a history of asthma. In July 2014, Dr. Jain noted Lecher-Zapata had been referred to a pulmonologist who diagnosed Lecher-Zapata with COPD and asthma and then wrote that Lecher-Zapata "most likely had this problem secondary to his work [as] he has been exposed to a lot of dust."

From June 2014 to September 2019, Lecher-Zapata also received treatment from Dr. Martin. In June 2014, Dr. Martin recorded that he wanted to treat Lecher-Zapata's COPD and asthma with two drugs and explained "[T]his is a mixed picture, he has dust exposure secondary to his demolition business. Doesn't have any known asbestos exposure." Over the duration of being treated by Dr. Martin, Lecher-Zapata underwent pulmonary function testing, an x ray, and a CT scan. In September 2019, Dr. Martin recorded that Lecher-Zapata's pulmonary function testing showed signs of mixed obstructive and restrictive defect; the x ray did not show significant abnormalities; and Lecher-Zapata's CT scan did not reveal any evidence of bronchiectasis or interstitial infiltrates. Dr. Martin further explained that although Lecher-Zapata was concerned his health condition was related to his demolition work, Dr. Martin concluded otherwise stating "without any significantly abnormal findings I do not believe this is related to exposures."

In August 2020, the workers' compensation court issued an order finding Lecher-Zapata failed to establish a causal connection between his health condition and his employment. In reaching this outcome, the court noted it had "conducted an exhaustive and critical review of the medical evidence submitted by the parties" and observed that the parties stipulated Lecher-Zapata had COPD but did not agree his medical condition was related to his employment.

The court's analysis also referenced the medical notes of Drs. Jain and Martin. The court observed that Dr. Jain's medical notes recorded that Lecher-Zapata believed his COPD was caused by the demolition dust he inhaled in connection with his employment. However, the court recognized that under Nebraska law, "history from a patient standing alone is simply not sufficient to satisfy plaintiff's burden of proof on causation." The court next discussed Dr. Martin's medical notes which stated that Lecher-Zapata's CT scan did not reveal any evidence that Lecher-Zapata was suffering from bronchiectasis or interstitial infiltrates. Instead, Dr. Martin opined that "without any significantly abnormal findings I do not believe [Lecher-Zapata's health condition] is related

to exposures." The court found Dr. Martin's opinion persuasive and credible due to his area of specialty and his interpretation of diagnostic studies that led him to conclude Lecher-Zapata's condition was not work-related. Ultimately, the court dismissed Lecher-Zapata's third amended complaint on the basis that Lecher-Zapata failed to provide a medical expert opinion which established causation. Lecher-Zapata has timely appealed to this court.

ASSIGNMENTS OF ERROR

Lecher-Zapata assigns that the district court erred in (1) dismissing his "Third Amended Complaint and abused its discretion, was bias[ed] and prejudice[d] toward the Appellate [sic], a Pro Se Litigant" and (2) dismissing the Third Amended Complaint when the court did not consider Dr. Martin's notes previously entered on June 18, 2019, stating "'one reason to consider he has worked in demolition business for 30 years. . . . and his notes of June 25, 2014, stat[ing] 'Asthma COPD: This is a mixed picture, he has dust exposure secondary to his demolition business.'" Brief for appellant at 4.

Lecher-Zapata also includes the following statements in his assignments of error section:

3. The appellant has the burden to show plain error, pursuant to Neb. Rev. Stat. § 25-1919. Plain error is error that is clear or obvious and that materially prejudices the substantial rights of appellant; once appellant has met his burden of persuasion, the burden shifts to the party to show that the error was not prejudicial. To be plain error: (1) there must be an error; (2) the error must be plain (clear or obvious); and (3) the error must materially prejudice the substantial rights of the defendant).

4. Section 48-121 provides that if a work-related injury is limited to a specific body member, a workers' compensation claimant is limited to the scheduled compensation provided under subsection (3) of the statute. See *Yager v. Bellco Midwest*, 236 Neb. 888, 464 N.W.2d 335 (1991).

5. An exception to a subsection (3) specific-member injury exists when an unusual or extraordinary condition as to other members or other parts of the body has developed. In such an event, a claimant is entitled to compensation based on lost earning capacity as provided under subsection (1) or (2) of the statute. *Jeffers v. Pappas Trucking. Inc.*, 198 Neb. 379, 253 N.W.2d 30 (1977).

6. As recently observed, in the event of body-as-a-whole disabilities, the basis for compensation "is determined by the employee's diminution of employability or impairment of earning power or earning capacity, and is not necessarily determined by a physician's evaluation and assessment of the employee's loss of bodily function." *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 470, 461 N.W.2d 565, 573 (1990). However, "[g]eneral disabilities which are the normal, usual, and logical consequence of member schedule.["] *Mead v. Missouri Valley Grain, Inc.*, 178 Neb. 553, 559, 134 N.W.2d 243, 248 (1965).

7. "It is sufficient to show that the injury and preexisting disease combined to produce disability in an occupational disease." *Gilcrest Lumber Co. v. Rengler*, 109 Neb. 246, 190 N.W. 578; *Skelly Oil Co. v. Gaugenbaugh*, 119 Neb. 698, 230 N. W. 688.

8. "Injury and personal injuries mean only violence to the physical structure of the body and such disease or infection as naturally results therefrom and personal injuries

described in section 48-101.01. The terms include disablement resulting from occupational disease arising out of and in the course of the employment in which the employee was engaged and which was contracted in such employment. The terms include an aggravation of a preexisting occupational disease, the employer being liable only for the degree of aggravation of the preexisting occupational disease. The terms do not include disability or death due to natural causes but occurring while the employee is at work and do not include an injury, disability, or death that is the result of a natural progression of any preexisting condition." Neb. Rev. Stat. § 48-151(4).

Brief for appellant at 4-6 (underscores omitted).

## STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2020), an appellate court may modify, reverse, or set aside a compensation court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Aboytes-Mosqueda v. LFA Inc.*, 306 Neb. 277, 944 N.W.2d 765 (2020).

As the trier of fact, the compensation court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Id.*

An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Frans v. Waldinger Corp.*, 306 Neb. 574, 946 N.W.2d 666 (2020).

## ANALYSIS

While Lecher-Zapata asserts the compensation court was biased towards him, a pro se plaintiff, Nebraska courts have long held that "[a] litigant proceeding on a pro se basis is obligated to follow the same appellate rules and procedures applicable to counsel, including the requirement that the appellant point out alleged errors by reference to specific portions of the record." *Mix v. City of Lincoln*, 244 Neb. 561, 563, 508 N.W.2d 549, 551 (1993). "Parties who wish to secure appellate review of their claims must abide by the rules of the Nebraska Supreme Court. Any party who fails to properly identify and present its claim does so at its own peril." *Great Northern Ins. Co. v. Transit Auth. of Omaha*, 308 Neb. 916, 922, 958 N.W.2d 378, 384 (2021). "Depending on the particulars of each case, failure to comply with the mandates of § 2-109(D) may result in an appellate court waiving the error, proceeding on a plain error review only, or declining to conduct any review at all." *Id.*

Neb. Ct. R. App. P. § 2-109(D)(1) (rev. 2014) governs the mandatory content of an appellant's brief and provides:

(1) The brief of appellant, or plaintiff in an original action, shall contain the following sections, under appropriate headings, and in the order indicated:

. . . .

(e) A separate, concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error. Each assignment

of error shall be separately numbered and paragraphed, bearing in mind that consideration of the case will be limited to errors assigned and discussed. The court may, at its option, notice a plain error not assigned;

(f) Propositions of law shall be contained in separate, numbered paragraphs, and shall state concisely and without argument or elaboration the legal propositions urged as controlling. Only propositions discussed in the argument shall be stated. Each proposition of law shall be followed by a list of supporting authorities. Preference in citation shall be given to those authorities deemed most important. Authorities cited under any proposition must be quoted or otherwise discussed in the argument.

Further, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *Cinatl v. Prososki*, 307 Neb. 477, 949 N.W.2d 505 (2020).

While Lecher-Zapata's assignments of error section contains eight numbered statements, six of the statements are propositions of law and do not belong in the assignments of error section. Additionally, the two statements that can be read as assigned errors are not argued in Lecher-Zapata's brief. Instead, the argument section of Lecher-Zapata's brief consists of approximately one page and we generally read that section as arguing the court erred in finding there was insufficient evidence in the record to establish causation. Because Lecher-Zapata did not comply with the mandates of § 2-109(D), we proceed on a plain error review.

"[T]o recover under the Nebraska Workers' Compensation Act, a claimant has the burden of proving by a preponderance of the evidence that an accident or occupational disease arising out of and occurring in the course of employment proximately caused an injury which resulted in disability compensable under the act." *Murphy v. City of Grand Island*, 274 Neb. 670, 676, 742 N.W.2d 506, 511 (2007). We note that it was Lecher-Zapata's burden to prove his health condition was caused by his employment, and as such, any failure to provide sufficient evidence of causation falls squarely on him. As we read his argument, Lecher-Zapata argues he satisfied his burden through a 2014 medical report from his treating physician Dr. Jain and his own statement provided in his brief that "[he] was never a smoker therefore his profession in the demolition business is the only reason for his development of COPD/Asthma by being around dust, mold and other pollutants while working for MWE Services Inc. d/b/a/ Midwest Demolition Company." Brief for appellant at 13. However, he also concedes that "[his] doctors never established causation of [his] COPD/Asthma one way or other." Brief for appellant at 12.

As to the former argument, it relates to a single line from a 2014 medical report authored by Dr. Jain and references the possibility of Lecher-Zapata's condition being secondary to dust inhalation. It is unclear whether that statement represents an opinion of Dr. Jain or relates to a statement of Lecher-Zapata's belief. However, we further recognize that the compensation court found Dr. Martin's medical notes and opinion highly credible and persuasive. Despite Dr. Martin's June 2014 note that Lecher-Zapata's COPD and asthma was "a mixed picture, he has dust exposure secondary to his demolition business. Doesn't have any known asbestos exposure," Dr. Martin concluded in 2019 that Lecher-Zapata's health condition was not causally-related to his employment. Dr. Martin's treatment of Lecher-Zapata included pulmonary function testing, an x ray, and a CT scan. Dr. Martin recorded in September 2019 that Lecher-Zapata's x ray did not

show any significant abnormalities and that after reviewing Lecher-Zapata's CT scan, there was no evidence of bronchiectasis or interstitial infiltrates. Dr. Martin further explained that while Lecher-Zapata was concerned his health condition was related to his work in demolition, Dr. Martin concluded otherwise saying "without any significantly abnormal findings I do not believe this is related to exposures." While Dr. Martin's opinion may possibly conflict with a sentence in Dr. Jain's report which stated the "Patient most likely had this problem secondary to his work he has been exposed to a lot of dust," the compensation court, as the trier of fact, is the sole judge of the credibility of witnesses and the weight to be given their testimony. See *Aboytes-Mosqueda v. LFA Inc.*, 306 Neb. 277, 944 N.W.2d 765 (2020). Dr. Martin, whom the compensation court found credible, did not link Lecher-Zapata's condition to his employment. The compensation court found Dr. Martin's testimony on causation to be the most credible on the issue. On appellate review, the factual findings made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Id*. In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the appellate court gives the successful party the benefit of every inference reasonably deducible from the evidence. *Id*. We find no plain error in the compensation court's order dismissing Lecher-Zapata's third amended complaint.

CONCLUSION

For the reasons stated herein, we affirm the workers' compensation court's dismissal of Lecher-Zapata's third amended complaint.

AFFIRMED.