Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/18/2020 09:08 AM CDT

CESAR ABOYTES-MOSQUEDA, appellant, v. LFA INC.
AND ISMAEL HUERTA, appellees.
___ N.W.2d ___

Filed June 26, 2020.    No. S-19-967.

1. **Workers' Compensation: Appeal and Error.** Pursuant to Neb. Rev.
   Stat. § 48-185 (Cum. Supp. 2018), an appellate court may modify,
   reverse, or set aside a Workers' Compensation Court decision only when
   (1) the compensation court acted without or in excess of its powers; (2)
   the judgment, order, or award was procured by fraud; (3) there is not
   sufficient competent evidence in the record to warrant the making of the
   order, judgment, or award; or (4) the findings of fact by the compensa-
   tion court do not support the order or award.
2. ____: ____. On appellate review, the factual findings made by the trial
   judge of the Workers' Compensation Court have the effect of a jury ver-
   dict and will not be disturbed unless clearly wrong.
3. **Workers' Compensation: Judgments: Appeal and Error.** In testing
   the sufficiency of the evidence to support the findings of fact in a work-
   ers' compensation case, an appellate court considers the evidence in the
   light most favorable to the successful party, every controverted fact must
   be resolved in favor of the successful party, and the appellate court gives
   the successful party the benefit of every inference reasonably deducible
   from the evidence.
4. **Workers' Compensation.** As the trier of fact, the Workers' Compensation
   Court is the sole judge of the credibility of witnesses and the weight to
   be given their testimony.
5. **Employer and Employee: Independent Contractor: Master and
   Servant.** Ordinarily, a person's status as an employee or an independent
   contractor is a question of fact; however, where the facts are not in dis-
   pute and where the inference is clear that there is, or is not, a master and
   servant relationship, the matter is a question of law.
6. **Employer and Employee: Independent Contractor.** There is no single
   test for determining whether one performs services for another as an

employee or as an independent contractor; rather, the following factors must be considered: (1) the extent of control which, by the agreement, the employer may exercise over the details of the work; (2) whether the one employed is engaged in a distinct occupation or business; (3) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (4) the skill required in the particular occupation; (5) whether the employer or the one employed supplies the instrumentalities, tools, and the place of work for the person doing the work; (6) the length of time for which the one employed is engaged; (7) the method of payment, whether by the time or by the job; (8) whether the work is part of the regular business of the employer; (9) whether the parties believe they are creating an agency relationship; and (10) whether the employer is or is not in business.

Appeal from the Workers' Compensation Court: JULIE A. MARTIN, Judge. Affirmed.

John E. Corrigan, of Dowd & Corrigan, L.L.C., for appellant.

James D. Garriott, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee LFA Inc.

Antonio VandenBosch, of VandenBosch Law, L.L.C., for appellee Ismael Huerta.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

FREUDENBERG, J.
## INTRODUCTION
Cesar Aboytes-Mosqueda was working on a roofing job when he slipped and fell from the roof. Aboytes-Mosqueda brought a workers' compensation claim against Ismael Huerta and LFA Inc. Aboytes-Mosqueda claims that Huerta was his employer and that Huerta and LFA conducted a scheme to avoid liability under the Nebraska Workers' Compensation Act. Aboytes-Mosqueda claims that LFA should be considered a statutory employer pursuant to Neb. Rev. Stat. § 48-116 (Reissue 2010). The court considered the evidence presented

and dismissed the claim, because Aboytes-Mosqueda failed to prove he was an employee of Huerta. We affirm.

## BACKGROUND

Aboytes-Mosqueda was working a roofing job with Huerta on June 13, 2018. While working on the roof, Aboytes-Mosqueda slipped and fell, but was caught by his harness. Aboytes-Mosqueda suffered a significant injury as a result of the fall and brought a claim in the Workers' Compensation Court against Huerta and LFA.

The roofing job was a result of a contract between the homeowner and Hometown Roofing, Inc. (Hometown), who is not a party to the case. Hometown subcontracted the job to LFA. LFA then arranged with Huerta to recruit a crew to build the roof. LFA explained that the people used on a roofing crew vary on a job-by-job basis and that each person on the crew is an independent subcontractor, not an employee.

The man who operates LFA, which is owned by his wife, testified at the workers' compensation hearing that LFA frequently does work contracted by Hometown and generally receives payment for roofing jobs from Hometown by check. After receiving payment from Hometown, LFA's operator pays a set amount to a roofing crew based on the square footage of the roof. Each roofing job was a separate agreement. LFA did not determine the hours of the roofing crew but would inspect the roof to ensure it was installed according to the contract.

Huerta's deposition was entered into evidence in lieu of live testimony due to his unavailability. Huerta testified in his deposition that he works with several different roofing companies and works on approximately seven to nine houses a year with LFA. He indicated that he is not a general contractor and that he works as a member of "the crew" alongside everyone else. He also testified that Aboytes-Mosqueda worked with him on approximately two or three houses a month during 2018 and did not work with him at all in 2017.

Huerta testified that the customary method for calculating pay was based on the number of plywood squares that cover the roof, or the rough square footage of the roof. His share of what the general contractor pays for the roofing job was always the same as the other roofers who worked with him.

At the job where Aboytes-Mosqueda was injured, there were five men working on the roofing crew, including Huerta. The money received from LFA was split evenly between each person on the crew. Huerta claimed that Aboytes-Mosqueda brought his own tools and that Huerta provided the ladder to access the roof. Huerta claimed that each worker brought his own harness. Huerta also testified that each member of the crew was free to determine his own schedule for starting and stopping work. In his deposition, Huerta testified that LFA approached him after the incident and had him sign a contract agreeing to carry workers' compensation insurance.

Aboytes-Mosqueda testified at the hearing that he had worked exclusively for Huerta since 2011. Aboytes-Mosqueda testified that there was a verbal hiring agreement between Huerta and himself, but he also testified that he was paid by the job. Aboytes-Mosqueda testified that Huerta would pick him up and provided the ladder and several tools, including the nail gun and compressor. Aboytes-Mosqueda claims that Huerta provided the harnesses and directed every member of the crew to use them at all times. Aboytes-Mosqueda admitted that he brought his own tool belt, hammer, and knife. Aboytes-Mosqueda also admitted that his pay for each job was the result of a verbal agreement with Huerta specific to each job. Aboytes-Mosqueda testified that no one saw him slip, but that he told Huerta at the jobsite right after the incident.

Aboytes-Mosqueda claimed that Huerta was his employer. He further argued to the compensation court that LFA subcontracted jobs with Huerta even though LFA knew that Huerta did not carry workers' compensation insurance. Thus, LFA was engaged in a scheme to avoid liability pursuant to § 48-116 and should be considered a statutory employer as a result.

Aboytes-Mosqueda asserted that Huerta's testimony concerning the agreement between Huerta and LFA proved Huerta was an employer and that LFA should be found to be a statutory employer under § 48-116.

The Workers' Compensation Court first considered the testimony of Aboytes-Mosqueda and Huerta and found that there was not a contract for employment between Aboytes-Mosqueda and Huerta. The court then considered the evidence in light of the 10 factors relevant to whether a person is an employee or an independent contractor. Without making determinations of credibility on the issue of who supplied the safety harness, nail gun, and compressor at the jobsite, the compensation court found that Aboytes-Mosqueda had failed to carry his burden of demonstrating that he was an employee of Huerta. Thus, § 48-116 was not applicable. The court dismissed the action, and Aboytes-Mosqueda appealed.

ASSIGNMENT OF ERROR

Aboytes-Mosqueda asserts that the district court erred in dismissing his action given the uncontroverted evidence of a scheme to avoid employer liability under the Nebraska Workers' Compensation Act.

STANDARD OF REVIEW

[1] Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2018), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.[1]

[2,3] On appellate review, the factual findings made by the trial judge of the Workers' Compensation Court have

---

[1] *Eddy v. Builders Supply Co.*, 304 Neb. 804, 937 N.W.2d 198 (2020).

the effect of a jury verdict and will not be disturbed unless clearly wrong.[2] In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the appellate court gives the successful party the benefit of every inference reasonably deducible from the evidence.[3]

[4] As the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given their testimony.[4]

## ANALYSIS

[5] In order for LFA to be considered an employer under § 48-116, Aboytes-Mosqueda had a burden to prove that he was an employee of Huerta as defined by the Nebraska Workers' Compensation Act.[5] Ordinarily, a person's status as an employee or an independent contractor is a question of fact; however, where the facts are not in dispute and where the inference is clear that there is, or is not, a master and servant relationship, the matter is a question of law.[6] We find that the factual determinations made by the trial court are not clearly wrong, and we agree with the compensation court that Aboytes-Mosqueda was not an employee of Huerta; thus, § 48-116 is not applicable to this case.

Aboytes-Mosqueda's only assignment of error is that the compensation court erroneously dismissed his claim, because the evidence showed a scheme by LFA to avoid liability.

---

[2] *Id.*

[3] *Id.*

[4] *Martinez v. CMR Constr. & Roofing of Texas*, 302 Neb. 618, 924 N.W.2d 326 (2019).

[5] See Neb. Rev. Stat. ch. 48, art. 1 (Reissue 2010, Cum. Supp. 2018, & Supp. 2019).

[6] *Pettit v. State*, 249 Neb. 666, 544 N.W.2d 855 (1996).

Aboytes-Mosqueda argues that because LFA had Huerta sign an agreement to obtain workers' compensation insurance after Aboytes-Mosqueda was injured, this is proof of the type of scheme prohibited by § 48-116.

Section 48-116 states:

> Any person, firm, or corporation creating or carrying into operation any scheme, artifice, or device to enable him or her, them, or it to execute work without being responsible to the workers for the provisions of the Nebraska Workers' Compensation Act shall be included in the term employer, and with the immediate employer shall be jointly and severally liable to pay the compensation herein provided for and be subject to all the provisions of such act. This section, however, shall not be construed as applying to an owner who lets a contract to a contractor in good faith, or a contractor, who, in good faith, lets to a subcontractor a portion of his or her contract, if the owner or principal contractor, as the case may be, requires the contractor or subcontractor, respectively, to procure a policy or policies of insurance from an insurance company licensed to write such insurance in this state, which policy or policies of insurance shall guarantee payment of compensation according to the Nebraska Workers' Compensation Act to injured workers.

We have recently explained that the protections provided under § 48-116 are to ensure that companies cannot use subcontractors to absolve them of the responsibility to ensure that employees are properly insured under the Nebraska Workers' Compensation Act.[7] The principal contractor has the responsibility to ensure that the subcontractor obtains a workers' compensation insurance policy.[8] In the event that the principal contractor fails to require a subcontractor to carry workers'

---

[7] See *Martinez v. CMR Constr. & Roofing of Texas, supra* note 4.

[8] See *id.* See, also, *Hiestand v. Ristau*, 135 Neb. 881, 284 N.W. 756 (1939).

compensation insurance and an employee of the latter sustains a job-related injury, the principal contractor is a statutory employer.[9]

Although we have never made this point explicit, it is clear from our case law and the language of § 48-116 that liability under § 48-116 presupposes that the injured worker was an "employee" of the subcontractor, to whom the subcontractor had an obligation to procure workers' compensation insurance protection.[10] We have found liability under § 48-116 only when the claimant was an employee of the subcontractor and the principal contractor failed to require the subcontractor to carry the proper insurance.[11] Thus, the applicability of § 48-116 depends on whether or not Aboytes-Mosqueda is an employee of Huerta under the Nebraska Workers' Compensation Act.

Neb. Rev. Stat. § 48-115 (Reissue 2010) provides the statutory definition for employee. Applicable here is § 48-115(2), which states in relevant part: "Every person in the service of an employer who is engaged in any trade, occupation, business, or profession as described in section 48-106 under any contract of hire, expressed or implied, oral or written, including aliens and also including minors." No evidence of an express employment contract was provided. Although Aboytes-Mosqueda testified that there was a verbal employment agreement, he did not disclose any details of this agreement, nor did he indicate when or where the agreement was made.

---

[9] See *Martinez v. CMR Constr. & Roofing of Texas, supra* note 4.

[10] See *Bohy v. Pfister Hybrid Co.*, 179 Neb. 337, 138 N.W.2d 23 (1965). See, also, *Gardner v. Kothe*, 172 Neb. 364, 109 N.W.2d 405 (1961); *Standish v. Larsen-Merryweather Co.*, 124 Neb. 197, 245 N.W. 606 (1932).

[11] See *Martinez v. CMR Constr. & Roofing of Texas, supra* note 4. See, also, *Duffy Brothers Constr. Co. v. Pistone Builders, Inc.*, 207 Neb. 360, 299 N.W.2d 170 (1980); *Bohy v. Pfister Hybrid Co., supra* note 10; *Gardner v. Kothe, supra* note 10; *Hiestand v. Ristau, supra* note 8; *Standish v. Larsen-Merryweather Co., supra* note 10.

There was conflicting testimony about whether there was a verbal agreement to create an agency relationship, and we find that the compensation court was not clearly wrong in determining there was no mutual intent between Aboytes-Mosqueda and Huerta to enter into an employment agreement.[12] Thus, we consider whether the compensation court was correct in finding Aboytes-Mosqueda was an independent contractor in light of the 10 factors set forth by this court.[13]

[6] There is no single test for determining whether one performs services for another as an employee or as an independent contractor; rather, the following factors must be considered: (1) the extent of control which, by the agreement, the employer may exercise over the details of the work; (2) whether the one employed is engaged in a distinct occupation or business; (3) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (4) the skill required in the particular occupation; (5) whether the employer or the one employed supplies the instrumentalities, tools, and the place of work for the person doing the work; (6) the length of time for which the one employed is engaged; (7) the method of payment, whether by the time or by the job; (8) whether the work is part of the regular business of the employer; (9) whether the parties believe they are creating an agency relationship; and (10) whether the employer is or is not in business.[14]

Several of these factors militate against finding that Aboytes-Mosqueda was an employee. Aboytes-Mosqueda testified that when he fell from the roof, no one was present because he was working alone on that particular section of the roof. The compensation court found that Aboytes-Mosqueda was

---

[12] See *Kaiser v. Millard Lumber*, 255 Neb. 943, 587 N.W.2d 875 (1999).

[13] See *Omaha World-Herald v. Dernier*, 253 Neb. 215, 570 N.W.2d 508 (1997).

[14] *Id*.

working independently when the accident occurred. Moreover, it was undisputed that the inspection of the work product at the end of each job was done by LFA, not by Huerta. These facts are indicative of an independent contractor rather than an employee.

Although Aboytes-Mosqueda testified that he worked exclusively for Huerta, the trial court found that Aboytes-Mosqueda was free to work with other roofers. Huerta worked with Aboytes-Mosqueda on two or three roofs a month during 2018 and did not work with him at all during 2017. Huerta testified that he regularly worked jobs without Aboytes-Mosqueda and that Aboytes-Mosqueda was free to decline jobs whenever Huerta called and offered work. Aboytes-Mosqueda's ability to accept or decline work on a job-by-job basis is also indicative of an independent contractor.

Both the length of time and manner of payment weigh heavily against Aboytes-Mosqueda. Aboytes-Mosqueda did not contest that he was always paid in cash by the job, and the amount was determined on a job-by-job agreement between himself and Huerta. Aboytes-Mosqueda received the same amount of money as each of the other crew members, including Huerta. Each job was usually only a couple of days, and occasionally, they would work two jobs in the same week. Based on the length of the jobs and Huerta's testimony that they worked together approximately two or three times a month, Aboytes-Mosqueda was actively working at a jobsite with Huerta approximately 6 days a month. We have explained that the shorter and more sporadic a job is, the more akin it is to one performed by an independent contractor.[15] Both the length of the jobs and the method of payment are indicative of an independent contractor.

As the compensation court noted, there was little to no evidence presented concerning several factors. There was no evidence addressing whether Aboytes-Mosqueda was a

---

[15] See *Pettit v. State, supra* note 6.

specialist, what the common practice in the locality is, or what kind of skill is required to be a roofer. We agree with the compensation court that if there were such additional facts supporting Aboytes-Mosqueda's status as an employee, he had the burden to present them.

The only factor upon the evidence presented that weighs in favor of considering Aboytes-Mosqueda an employee is the fact that roofing is a part of the regular business or trade of Huerta. However, Huerta testified that he did not hold himself out to be a business and no evidence was presented to contradict his testimony. There was conflicting testimony concerning who supplied the safety harnesses and some of the tools. There was also disagreement over whether work hours were set by Huerta or as a crew. It was uncontested that Aboytes-Mosqueda brought his own tool belt, hammer, and knife. Aboytes-Mosqueda claims that Huerta provided transportation to the jobsite, which demonstrates control over the work hours. The compensation court found that Aboytes-Mosqueda was free to work or stop working at will and that the amount of time spent on a job was the result of consensus by the crew.

The compensation court did not make factual determinations as to who supplied the safety harnesses, nail gun, and compressor, but even if we accepted Aboytes-Mosqueda's testimony that Huerta supplied these tools, such facts would not be sufficient to establish that Aboytes-Mosqueda was in fact an employee. The majority of the factors, including the extent of control Huerta exercised over Aboytes-Mosqueda, support the conclusion that Aboytes-Mosqueda was not an employee of Huerta as defined by the Nebraska Workers' Compensation Act. The compensation court did not clearly err in making this determination. Thus, § 48-116 does not apply to this case and whatever agreements did or did not occur between Huerta and LFA following Aboytes-Mosqueda's injury are irrelevant. The plaintiff, in the Workers' Compensation Court, must prove that she or he has employee status to invoke the jurisdiction

of the court.[16] The compensation court did not err in concluding that Aboytes-Mosqueda failed to prove his employee status. Thus, it did not err in dismissing the action.

## CONCLUSION

The Workers' Compensation Court did not clearly err in its determination that Aboytes-Mosqueda was not an employee of Huerta. As a result, § 48-116 is inapplicable to the present case. The judgment of the Workers' Compensation Court is affirmed.

AFFIRMED.

---

[16] *Id.*