IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


RODGERS V. HONEYWELL INTERNATIONAL


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


SUEANNA L. RODGERS, APPELLEE,

V.

HONEYWELL INTERNATIONAL, INC., AND XL INSURANCE AMERICA, INC., APPELLANTS.


Filed May 4, 2021.    No. A-20-692.


Appeal from the Nebraska Workers' Compensation Court: J. MICHAEL FITZGERALD, Judge. Affirmed.

Caroline M. Westerhold and Jenna M. Christensen, of Baylor Evnen, L.L.P., for appellants.

Jamie Gaylene Scholz and Franklin E. Miner, of Miner, Scholz & Associates, P.C., L.L.O., for appellee.


RIEDMANN, ARTERBURN, and WELCH, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Honeywell International, Inc., and XL Insurance America, Inc. (collectively Honeywell), appeal the order of the Nebraska Workers' Compensation Court finding that Sueanna L. Rodgers sustained a work-related injury and awarding her benefits. We affirm the compensation court's decision.

## BACKGROUND

Rodgers was employed by Honeywell from March through October 2017 in an assembly position building diaphragms that go inside of gas meters. As part of her job duties, she took diaphragm forms off of an oven, which entailed reaching up for the form, pulling it down, and putting it on a table. She performed this action every minute or two for an hour before switching

to a different position, and she worked in that position three times during each shift. At one point during her work shift on April 29, Rodgers reached up to take a form out of the oven, and as she was lowering it down to the table, she felt a sharp pain in her left elbow. Rodgers reported the incident to Honeywell's nurse.

On May 1, 2017, Rodgers presented to an advanced practice registered nurse (APRN) for the pain in her elbow. The APRN's assessment was ulnar neuropathy at the elbow. She gave Rodgers work restrictions and several prescription medications and asked her to follow up in a week. Rodgers returned to see the APRN on May 8, where she again complained of pain and weakness in her left elbow. The assessment remained the same, and the APRN gave Rodgers an elbow splint and told her to continue the medications. Rodgers followed up again on May 16. At that time, Rodgers reported that her pain had not improved at all, and the APRN discussed options with her including a nerve conduction test or a referral to a neurosurgeon or orthopedic surgeon. These options were on hold at that time, however, because according to the APRN's notes, they were waiting on the workers' compensation insurance to approve moving forward with one of those plans. At that appointment, Rodgers also reported that her prescription pain medications were not working and requested Percocet, which the APRN then prescribed for her. Rodgers was asked to return in a week, and she did so on May 22. Rodgers was ultimately referred to Dr. Jason Weber, an orthopedic surgeon.

Rodgers saw Weber on May 25, 2017, and he diagnosed her with left lateral epicondylitis. He asked that she stay out of the elbow splint and start moving her elbow, but gave her a wrist splint and referred her to physical therapy. He asked to see her back in 2 months, at which time she could likely return to work after regaining some of her strength. On June 6, Rodgers returned to see the APRN and reported that her nerve pain had increased while wearing the wrist splint from Weber. The APRN recommended a nerve conduction test and an increase in medications. She also referred Rodgers to orthopedic surgeon, Dr. Scott Strasburger, because Weber no longer made appointments in that geographic area.

Rodgers presented to Strasburger on June 13, 2017. He noted that she injured her left elbow at work while pulling on boxes and doing repetitive activities. He, too, diagnosed her with left lateral epicondylitis and noted that she was to begin physical therapy and then return in 2 to 3 weeks if she had not improved. Strasburger indicated that Rodgers was not able to return to work full time or full duty, nor could she return to work with restrictions at that time.

Rodgers followed up with Strasburger on July 10, 2017. She reported improvement at that time and was to continue physical therapy. Strasburger asked her to return in 2 to 4 weeks and noted that if she remained symptomatic at that time, he would recommend an open release of her extensor carpi radialis brevis and debridement of her lateral epicondylitis. She remained off work at that time. Rodgers returned to see Strasburger on August 7. She was markedly improved since her previous visit and was given a note to begin light duty work on August 21. Strasburger asked Rodgers to return in 4 to 6 weeks if she continued to have problems, but otherwise, only as needed. She did not follow up with Strasburger.

Weber authored a letter dated November 13, 2017, in which he reported that he had examined Rodgers on May 25 and that she had symptoms consistent with left lateral epicondylitis. He opined that it was medically probable that her injury was caused by her work activities because this condition is typically caused by repetitive activities. Weber also noted that at the time he saw

Rodgers, he recommended that she follow up with him in 2 months but that she did not do so. He indicated that if she continued experiencing symptoms of the left lateral epicondylitis, he would recommend that she return to see him to discuss her treatment options.

Strasburger also provided a letter, dated May 5, 2018, in which he opined with a reasonable degree of medical certainty that Rodgers' left lateral epicondylitis was caused by her work activities as a diaphragm assembler. He wrote that he reviewed Rodgers' job description and the physical requirements contained therein. Strasburger noted that he last saw Rodgers on August 7, 2017, and that at that time, he asked her to follow up if she had any further problems, but that she did not return. He therefore placed her at maximum medical improvement (MMI) as of October 1, with no disability rating.

Rodgers filed a petition in the compensation court alleging that she sustained an injury to her left elbow arising out of and in the course of her employment. A hearing was held before the compensation court in June 2020. The evidence established that Honeywell denied Rodgers' compensation claim in May 2017. Rodgers testified that although Strasburger referred her to physical therapy, she was unable to complete the full course prescribed for her because "the bills weren't getting paid." Then when she tried to return to see Strasburger after August 7, his office informed her that because her workers' compensation claim had been denied, Strasburger would not see her unless she could pay for the appointment herself upfront.

Rodgers acknowledged that at her deposition in January 2018, she denied having any ongoing problems which necessitated a return to the doctor, but she testified at the hearing before the compensation court that sometime after her deposition, her situation changed. Thus, as of the time of the hearing, she continued to have issues with her left elbow. She explained that she is unable to carry anything without pain shooting through her elbow and that her symptoms affect her ability to work because she is unable to lift more than 5 pounds with her left hand. Therefore, she wanted to return to see Strasburger for additional treatment.

The parties presented evidence regarding the description of Rodgers' job duties that had been provided to Strasburger in the course of his treatment of Rodgers. It is undisputed that the three-page document covers multiple jobs within the area of "diaphragm assembly cell" and that there are many tasks on the document that Rodgers never performed during her employment with Honeywell. For example, under the heading entitled "effort," the document indicates that an operator may be required to occasionally lift 100 pounds, push and pull weights up to 600 pounds using equipment, or manually push and pull weights up to 1,225 pounds. Rodgers did not perform these tasks. However, Rodgers explained that the description detailing removing molds from an oven conveyor was an accurate description of the task that she repeatedly performed on a daily basis and was the job description that she reported to both Weber and Strasburger.

After the conclusion of the hearing, the compensation court entered an award finding that Rodgers sustained a work-related injury to her left elbow. This finding was based on Strasburger's May 2018 opinion that Rodgers' elbow injury was caused by her work activities as a diaphragm assembler. The award detailed the nature of Rodgers' injury and the medical treatment she sought. The compensation court recognized that Strasburger placed Rodgers at MMI as of October 1, 2017, but it found that Rodgers was unable to return to see Strasburger due to her inability to pay for further treatment. The court observed that Rodgers stated that her elbow was still painful and asked to see a doctor. It therefore concluded that Rodgers had not reached MMI and that she was entitled

to see Strasburger one additional time at Honeywell's cost. The court also awarded Rodgers temporary total disability benefits from May 8 through 16, 2017, and from May 25 through August 20.

The court set the matter for further hearing for a determination of payment of medical bills. After that hearing, the compensation court ordered Honeywell to pay the medical bills and mileage offered into evidence by Rodgers. Honeywell appeals.

## ASSIGNMENTS OF ERROR

Honeywell assigns that the compensation court erred in (1) finding that Strasburger's opinion had sufficient foundation and relying on it to find that Rodgers had proven an injury causally related to her employment, (2) finding sufficient medical evidence to support a finding that Rodgers was not at MMI, (3) awarding future medical care, (4) questioning witnesses, (5) requiring it to pay a May 16, 2017, medical bill, and (6) entering the award with insufficient findings of fact such that an appellate court can conduct a meaningful review under Rule 11.

## STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2018), an appellate court may modify, reverse, or set aside a compensation court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Aboytes-Mosqueda v. LFA Inc.*, 306 Neb. 277, 944 N.W.2d 765 (2020).

On appellate review, the factual findings made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Id*. In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the appellate court gives the successful party the benefit of every inference reasonably deducible from the evidence. *Id*.

As the trier of fact, the compensation court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Id*.

## ANALYSIS

*Strasburger's Opinion.*

Honeywell first argues that the compensation court abused its discretion in finding that Strasburger's opinion as to causation had sufficient foundation and in relying on it to find that Rodgers' injury was causally related to her employment. Honeywell asserts that the description of Rodgers' job provided to Strasburger included duties that Rodgers never performed, and thus, his opinion was based on faulty and overbroad information. We find no abuse of discretion in the court's decisions in this regard.

Admission of evidence is within the discretion of the compensation court, whose determination in this regard will not be reversed upon appeal absent an abuse of discretion. *Hynes v. Good Samaritan Hosp.*, 291 Neb. 757, 869 N.W.2d 78 (2015). Expert testimony should not be received if it appears the witness is not in possession of such facts as will enable him or her to

express a reasonably accurate conclusion, as distinguished from a mere guess or conjecture. *Id*. It is within the trial court's discretion to determine whether there is sufficient foundation for an expert witness to give his or her opinion about an issue in question. *Id*.

In *Hynes v. Good Samaritan Hosp., supra*, the plaintiff claimed that she suffered a work-related injury and offered into evidence at trial a report from an expert witness who opined as to the causation and extent of the plaintiff's psychological injuries. The defendant objected, arguing that the expert's opinions lacked foundation because the plaintiff had allegedly been untruthful about her personal and psychiatric history during her interview with the expert.

On appeal, the Nebraska Supreme Court concluded that the compensation court had not abused its discretion in finding that the expert's opinion had sufficient foundation. The court determined that whether the expert possessed or considered the entirety of the plaintiff's personal or psychological history in forming her opinions ultimately concerned the weight to be given to the opinions by a trier of fact, rather than the admissibility of the opinions. The Supreme Court reiterated that "[a]n appellate court is not a superexpert and will not lay down categorically which factors and principles an expert may or may not consider; such matters go to the weight and credibility of the opinion itself and not to its admissibility." *Id*. at 768, 869 N.W.2d at 88.

The same is true in the present case. Whether Strasburger had sufficient and accurate information from which to base his opinion goes to the weight and credibility the opinion should be given, not to the admissibility of the opinion. It is true that expert testimony should not be received if it appears the witness is not in possession of such facts as will enable him or her to express a reasonably accurate conclusion, as distinguished from a mere guess or conjecture. See *Hynes v. Good Samaritan Hosp.*, 291 Neb. 757, 869 N.W.2d 78 (2015). But Honeywell does not assert that Strasburger had insufficient information upon which to base his opinion. Instead, it argues that he had inaccurate information. However, Strasburger examined Rodgers on multiple occasions, spoke with her about her job and injury, and reviewed information related to her job duties. Rodgers testified that she described her job duties to both Strasburger and Weber. Thus, the compensation court's finding that Strasburger's opinion had sufficient foundation was not an abuse of discretion.

The question then is whether the court abused its discretion in relying on Strasburger's opinion as to the cause of Rodgers' injury. The parties and the court understood that the complete job description in the documents provided to Strasburger included duties beyond those that Rodgers ever performed. And Strasburger's letter indicates that he reviewed Rodgers' job description and the physical requirements.

Rodgers testified, however, that the details regarding the removal of molds from the oven conveyor listed on the documents accurately described her job duties, was something that she performed on a regular basis while working for Honeywell, and was what she reported to Strasburger about the job she was performing at the time of her injury. Strasburger's notes support Rodgers' testimony in that he noted that Rodgers injured her left elbow at work while pulling on boxes and doing repetitive activities.

Further supporting Strasburger's opinion was Weber's November 2017 letter stating that it was medically probable that Rodgers' elbow injury was caused by her work activities because this condition is typically caused by repetitive activities. Thus, the evidence indicates that it was the repetitious nature of the duties Rodgers performed, which included reaching up, pulling the

form down, and putting it on a table every minute or two for an hour, that caused her elbow injury, rather than lifting, carrying, pushing, or pulling heavy weight or other duties that Rodgers did not actually perform. The compensation court, therefore, could find Rodgers' testimony credible and conclude that Strasburger was aware of the exact duties that Rodgers was regularly doing at the time of her injury and that such duties caused her elbow injury.

It is the role of the compensation court as the trier of fact to determine which, if any, expert witnesses to believe. *Hynes v. Good Samaritan Hosp., supra*. The evidence in the record including Rodgers' testimony and Weber's opinion was sufficient to support the compensation court's decision to find Strasburger's opinion credible. As the trier of fact, the compensation court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Id*. Accordingly, we conclude that the compensation court did not abuse its discretion in admitting and considering Strasburger's opinion as to the cause of Rodgers' injury.

*Finding Rodgers Was Not at MMI.*

Honeywell next contends that there is insufficient medical evidence in the record to support the compensation court's finding that Rodgers was not at MMI. We disagree.

The date of maximum medical improvement for purposes of ending a workers' compensation claimant's temporary disability is the date upon which the claimant has attained maximum medical recovery from all of the injuries sustained in a particular compensable accident. *Stacy v. Great Lakes Agri Mktg.*, 276 Neb. 236, 753 N.W.2d 785 (2008). A claimant has not reached maximum medical improvement until all the injuries resulting from an accident have reached maximum medical healing. *Id*.

Generally, whether a workers' compensation claimant has reached maximum medical improvement is a question of fact. *Krause v. Five Star Quality Care*, 301 Neb. 612, 919 N.W.2d 514 (2018). In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and we give the successful party the benefit of every inference reasonably deducible from the evidence. *Id*.

Honeywell asserts that the only evidence in the record regarding MMI was Strasburger's opinion that Rodgers had reached MMI. Strasburger's letter indicated that the last time he saw Rodgers in August 2017, he asked her to return if she had further problems but that she had not returned; he therefore placed her at MMI as of October 1, 2017, with no disability rating.

Rodgers, however, testified that Strasburger referred her to physical therapy, but that she was not able to complete the full course he recommended because "the bills weren't getting paid." She further explained that when she attempted to return to see Strasburger after her August 7 appointment, his office informed her that her workers' compensation claim had been denied and that Strasburger would not see her unless she could pay for the appointment herself upfront.

Rodgers also reported that she continued to have problems with her left elbow. As of the time of the hearing, she remained unable to carry anything in her left hand without pain shooting through her elbow and unable to lift more than 5 pounds with her left hand. She explained that sometime after her deposition, her situation changed and, thus, at the time of the hearing, she wanted to return to see Strasburger for additional treatment related to her left elbow.

It is the role of the compensation court as the trier of fact to determine which, if any, expert witnesses to believe. *Hynes v. Good Samaritan Hosp.*, 291 Neb. 757, 869 N.W.2d 78 (2015). The court could therefore elect to find that Strasburger's opinion regarding MMI was not credible because it was based on his assumption that Rodgers had not returned to see him because she had no further problems with her elbow. The compensation court could instead find that Rodgers had not yet reached MMI based on her testimony that she continued to experience pain and limitations with her elbow, she was never able to finish her initial course of treatment, and she was told to return to see Strasburger if necessary but was unable to do so for financial reasons. Although Rodgers never explicitly testified that she could not pay the costs associated with treatment from Strasburger, the compensation court could infer that she was unable to do so based on her testimony that she attempted to schedule an appointment but that Strasburger's office required payment from her upfront before he would see her again and she did not pay the outstanding balance and schedule an appointment with him.

To the extent Honeywell argues that Rodgers was required to present expert testimony that she was not at MMI, we note that it would be reasonable to infer that Rodgers was precluded from seeking additional medical treatment because her workers' compensation claim had been denied and she could not pay the cost of her care. In addition, the medical records support a finding that additional treatment is available to assist with Rodgers' symptoms. In Weber's November 2017 letter, he wrote that if Rodgers was still experiencing symptoms in her left elbow, he would recommend that she follow up with him to discuss treatment options. More specifically, on July 10, Strasburger asked Rodgers to return to see him in 2 to 4 weeks, and if she remained symptomatic at that time, his recommendation would be for her to have an open release of her extensor carpi radialis brevis and debridement of her lateral epicondylitis. Although her symptoms had improved when she returned to see him on August 7, she explained at the hearing that her symptoms have since returned and continue to cause her pain and restrict her activities. Based on the foregoing, we conclude that the compensation court's factual finding that Rodgers had not reached MMI was not clearly erroneous.

*Future Medical Care.*

Honeywell argues that it was clear error for the compensation court to enter an "awkward award" of future medical care when it authorized Rodgers to see Strasburger one additional time. Brief for appellant at 18. Honeywell claims that Rodgers failed to meet her burden of proving that she needed future medical treatment. While we agree that the phrasing of the court's award is somewhat unusual, we disagree that the court's authorization of a further office visit with Strasburger constituted an award of "future medical treatment" as that term is typically used in the workers' compensation arena. To the contrary, the court's order states that "[w]hether or not further treatment is required will be up to Dr. Strasburger." Therefore, the court's order authorizing an additional office visit with Strasburger is not an award of future medical treatment.

Further, we find no error in the court's authorization of an additional examination by Strasburger at Honeywell's expense. The court noted that Rodgers had not yet reached MMI and that her insurance had run out. As outlined above, the record indicates that there were additional treatment options available to Rodgers that may help alleviate her symptoms. An employer is liable for all reasonable services and medicines as and when needed, which are required by the nature of

the injury and which will relieve pain or promote and hasten the employee's restoration to health and employment. *Sellers v. Reefer Systems*, 283 Neb. 760, 811 N.W.2d 293 (2012). Because Rodgers had not yet reached MMI and continued to suffer pain due to her work related injury, the compensation court did not err in ordering Honeywell to pay for Rodgers to return to see Strasburger to determine if further treatment was required.

*Court's Questioning of Witnesses.*

Honeywell contends that the compensation court erred when it questioned witnesses, arguing that the court's questions went far beyond the function of truth finding and bordered on advocacy on behalf of Rodgers. We disagree.

In relevant part, Neb. Rev. Stat. § 48-162(1) (Reissue 2010) provides:

The Nebraska Workers' Compensation Court, or any judge thereof, is authorized and empowered to examine under oath or otherwise any person, employee, employer, agent, superintendent, supervisor, or officer of any partnership, limited liability company, or corporation, any officer of any domestic insurance company, any agent of any foreign insurance company, or any medical practitioner. . . . In the examination of any witness . . . the compensation court shall have and exercise all of the powers of a judge, magistrate, or other officer in the . . . examination of witnesses, including the power to enforce his or her orders by commitment for refusal to answer or for the disobedience of any such order.

To preserve a claimed error in admission of evidence, a litigant must make a timely objection which specifies the ground of the objection to the offered evidence. *Paulsen v. State*, 249 Neb. 112, 541 N.W.2d 636 (1996). If the party against whom evidence is offered fails to object to such evidence, that party is considered to have waived whatever objection he or she may have had, and the evidence is in the record for consideration the same as other evidence. *Id*.

Our review of the record reveals that the compensation court interposed questions to witnesses at numerous points during the hearing. The only occasion at which Honeywell objected was when the court began to question Rodgers at a time when she was not on the witness stand regarding whether she gave doctors' notes to Honeywell communicating the times she was taken off work or put on light duty work. Thus, this is the only issue in this regard that has been preserved for appeal. At that time, Honeywell objected to the questioning of Rodgers on the grounds that she was no longer under oath.

We first note that § 48-162(1) allows workers' compensation judges to "examine under oath *or otherwise* any person . . . ." (Emphasis supplied.) So the fact that Rodgers was no longer on the witness stand under oath does not support a finding that the court's questioning was improper. We also find that it is clear from the interaction between the court, counsel for each party, and Rodgers that the court was attempting to clarify the dates that Rodgers was taken off work for the purposes of calculating her temporary disability benefits. We understand that the purpose of the court's questioning related to the factual issue of the dates that Rodgers would be entitled to temporary disability benefits. And we observe that its finding in this regard is not challenged on appeal. Accordingly, we reject Honeywell's argument that the court exceeded its permissible boundaries when questioning Rodgers here.

*May 16, 2017, Medical Bill.*

Honeywell challenges the compensation court's decision to order it to pay Rodgers' medical bill resulting from a May 16, 2017, visit to her APRN. It argues that the treatment on that date was not reasonable or necessary because Rodgers admitted that her husband asked her to request a different pain medication at that appointment and that he wanted the medication for himself.

When an employee in a workers' compensation case presents evidence of medical expenses resulting from injury, he or she has made out a prima facie case of fairness and reasonableness, causing the burden to shift to the employer to adduce evidence that the expenses are not fair and reasonable. *Escobar v. JBS USA*, 25 Neb. App. 527, 909 N.W.2d 373 (2018). Whether medical treatment is reasonable or necessary to treat a workers' compensation claimant's compensable injury is a question of fact. *Id.*

Despite Honeywell's argument, the medical records indicate that the purpose of Rodgers' May 16, 2017, visit was related to her left elbow injury. She first saw the APRN on May 1. She was asked to follow up in 1 week, and she returned on May 8. She was again asked to return in 1 week, and she did so on May 16. At the May 16 appointment, Rodgers continued to complain of pain in her left elbow and indicated that her pain had not improved at all. She told the APRN that the prescription medications she had been taking were not working for her, so she specifically requested Percocet. The APRN acquiesced, despite indicating in her notes that Percocet is typically not needed for this type of condition. Rodgers was asked to follow up again in 1 week.

We understand that at the hearing before the compensation court, Rodgers acknowledged that she asked for Percocet at the request of her husband and admitted that at times her husband attempted to obtain prescription medications through her. However, Honeywell agrees that the May 16, 2017, medical bill that it was ordered to pay did not include the cost of the medication itself; rather, it was solely for the cost of the office visit. The medical records make clear that Rodgers presented to the APRN on May 16 as a followup visit for her elbow injury and complained that her pain had not improved. The compensation court's factual finding that the medical treatment was reasonable and necessary to treat Rodgers' compensable injury was therefore not clearly erroneous.

*Meaningful Review.*

In its final assigned error, Honeywell assigns that the compensation court's award does not provide a meaningful basis for appellate review as required by the compensation court rules. Under Rule 11 of the Nebraska Workers' Compensation Court Rules of Procedure, decisions of the court shall provide the basis for a meaningful appellate review, and the judge shall specify the evidence upon which the judge relies.

Honeywell claims that the court's order in this case fails to specify what evidence, authority, or reasoning it relied upon in awarding future medical treatment and the details of that future treatment, what evidence the court relied upon in finding that Rodgers was not at MMI, and how it determined the dates for which Rodgers was entitled to temporary disability benefits without additional posthearing information the court requested from the parties.

We have addressed the issues of future medical care and MMI above and find the award in this case sufficient for us to do so. The testimony offered at the hearing in combination with the

medical records received into evidence sufficiently detail the dates Rodgers was taken off work for purposes of awarding her temporary disability benefits, and those dates are neither disputed nor raised on appeal. Further, the award specifies those dates and notes that "Strasburger took [Rodgers] off work during this period of time." The court's award outlines the evidence and explains how and why it reached its decision sufficiently to allow for a meaningful review; therefore, it is satisfactory for purposes of Rule 11.

## CONCLUSION

The compensation court did not abuse its discretion in admitting Strasburger's expert opinion or relying on it to find that Rodgers sustained a work-related injury to her left elbow. Additionally, the court did not err in concluding that Rodgers was not at MMI, ordering Honeywell to pay for Rodgers to return to see Strasburger and for the May 16, 2017, medical bill, or questioning witnesses. Finally, we find that the court's order was sufficient to provide for meaningful appellate review. We therefore affirm the decision of the compensation court.

AFFIRMED.