IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

McNutt v. T & L Peterson Trucking

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

William McNutt, appellant,

v.

T & L Peterson Trucking, Inc., and Great West Casualty Co., appellees.

Filed November 16, 2021.    No. A-21-268.

Appeal from the Nebraska Workers' Compensation Court: Dirk V. Block, Judge. Affirmed.

Larry R. Demerath for appellant.

Ellen A. Deaver, of Atwood, Holsten, Brown, Deaver, Spier & Israel Law Firm, P.C., L.L.O., and Emily T. Newcomb, Senior Certified Law Student, for appellees.

Pirtle, Chief Judge, and Riedmann and Welch, Judges.

Riedmann, Judge.

## INTRODUCTION

William McNutt appeals the award of the Nebraska Workers' Compensation Court, which found that as a result of a work-related accident, he suffered a scheduled member injury, and not a body as a whole injury; thus, the court declined to find him permanently totally disabled. We affirm the compensation court's decision.

## BACKGROUND

McNutt was an employee of T & L Peterson Trucking, Inc., working as a tractor-trailer driver. In October 2017, he was involved in a motor vehicle accident arising out of and in the course of his employment, which caused injury to his left shoulder. At trial, the parties stipulated that the accident was work-related, that McNutt suffered an injury to his left upper extremity, that

McNutt provided timely notice of his injury to his employer, and that McNutt's average weekly wage was $717.20.

After the accident, McNutt sought medical care and complained of left shoulder pain with numbness and tingling radiating down the ulnar side of his arm into his left fingers. He received an injection to assist with the pain. Initially after the accident, McNutt also reported some neck symptoms, but a January 29, 2018, medical record of Dr. Jeremy Gallant indicates that McNutt's neck symptoms had nearly resolved at that time and that his cervical imaging was fairly unremarkable with no surgical recommendations. McNutt continued to experience symptoms with his left shoulder and biceps, however, and reported persistent numbness in his fourth and fifth fingers. Gallant found that McNutt's symptoms were consistent with left biceps tendinopathy, ulnar neuritis, and carpal tunnel syndrome. McNutt received another injection and was ordered to do physical therapy.

McNutt followed up with Gallant in March 2018 after having completed physical therapy. He reported that the tingling and pain had improved but that he continued to have some weakness in his left hand and weakness and decreased range of motion in his left shoulder. Gallant released McNutt to return to work at that time.

McNutt returned to see Gallant in May 2018. He reported continued shoulder pain when climbing into his trailer and loading and unloading the trailer. Gallant noted that McNutt's shoulder was his greatest limitation, that he had no significant neck pain, and that his range of motion and numbness had improved.

Subsequent to McNutt's May 2018 appointment, Gallant authored a letter explaining that McNutt's diagnoses included left shoulder pain, biceps tendinopathy, carpal tunnel syndrome, and ulnar neuritis. Gallant opined that degenerative changes in McNutt's shoulder and neck and the carpal tunnel syndrome were not related to his October 2017 work accident. He further opined that the ulnar neuropathy and biceps tendinopathy were caused by the October 2017 accident. Gallant noted that McNutt's ulnar and biceps symptoms had improved substantially with treatment but that McNutt continued to have some intra-articular shoulder pain; thus, he deferred to McNutt's treating orthopedic surgeon as to whether McNutt's shoulder required further treatment and as to whether that treatment was related to the work accident or to McNutt's preexisting arthritic condition.

In a September 5, 2018, letter, Gallant placed McNutt at maximum medical improvement as of May 8. Gallant assigned him a combined 10-percent upper extremity impairment rating as a result of the ulnar nerve injury and bicep tendinitis, noting that this impairment rating "correlates with a 6 percent whole person impairment rating" using a table from the AMA Guides, Sixth Edition. He also assigned McNutt permanent restrictions on activities using his left upper extremity.

McNutt underwent a functional capacity evaluation (FCE) in October 2018. Gallant reviewed the FCE and clarified and adopted the work restrictions it outlined for McNutt. Gallant additionally opined that these limitations are primarily secondary to his ongoing shoulder issues with minimal limitations caused by his ulnar nerve injury. Gallant explained that it was "incredibly difficult" to delineate McNutt's underlying shoulder arthritis from biceps tendinopathy in the restrictions but that it was reasonable to attribute the majority of his limitation of left upper

extremity reaching and avoidance of overhead activities to the biceps tendinopathy, which was directly related to the October 2017 work accident.

In June 2019, Gallant further clarified his opinions related to the FCE, stating that in his opinion, the restrictions were attributable to the left shoulder injury only and were not due to any cervical or neck problems. He commented that McNutt did not have significant cervical complaints or limitations at the time of his evaluations.

T & L Peterson Trucking, Inc. and its insurer, Great West Casualty Company (collectively, T & L), did not dispute that McNutt had suffered a work-related injury to his left upper extremity and paid temporary indemnity benefits and medical expenses. They also accepted that he had a 10-percent permanent impairment and paid him permanent benefits for a scheduled member injury.

In May 2020, McNutt filed a petition in the compensation court. He alleged that as a result of the October 2017 accident, he was permanently and totally disabled.

At trial, McNutt explained that he worked as a driver for T & L, running commodities from location to location. When he went back to work in March 2018, he discovered that he had great difficulty trying to open the traps on the trailer in order to unload the commodity he was delivering. Thus, he was only able to work for about 2 weeks before he quit. McNutt then found another similar job, but the trailer was designed differently so it unloaded itself. However, he had to manually crank a tarp on that trailer, and he was unable to do that motion because of his shoulder injury. McNutt only worked at that job for approximately 6 months and then quit about November 1. He has not worked since that time.

The compensation court entered an award subsequent to trial. It found no dispute that McNutt suffered a work injury in October 2017 and that he was entitled to the temporary total disability benefits that T & L had paid him. Relying on Gallant's opinion, the court also determined that McNutt reached maximum medical improvement for his work injury on May 8, 2018. The court recognized that the main issue that divided the parties was the nature and extent of McNutt's permanent disability, observing that it was required to make a factual determination as to whether McNutt suffered a whole body injury or a scheduled member injury.

The court noted Gallant's opinion that McNutt suffered permanent injury to the ulnar nerve and biceps tendon in his left arm as a result of the work accident and Gallant's impairment rating of 10 percent to the left upper extremity. It observed that the permanent restrictions that Gallant assigned were limited to the function of the left arm and that McNutt testified as to having no other impairments or limitations to any part of his body other than the left arm.

The compensation court recognized that the only evidence that McNutt suffered an impairment to the body as a whole was in Gallant's September 2018 letter. The court gave no weight to that opinion, however, finding that the correlation from left arm to whole body was only a conversion factor and stating that it was not persuaded that McNutt's left arm injury had somehow manifested itself as a whole body injury. Therefore, based on McNutt's testimony and the evidence presented, including Gallant's opinions, the court found that the location of the residual impairment from the October 2017 injury was to McNutt's left arm. As such, it concluded that the disability McNutt suffered was a scheduled member injury, and not a body as a whole injury. Accordingly, McNutt was entitled to benefits under Neb. Rev. Stat. § 48-121(3) (Reissue 2010).

Moreover, because there was no evidence or testimony that some further condition to other members or other parts of McNutt's body developed as a result of the left arm injury, the court found that the law precluded consideration of loss of earning capacity and permanent disability. Thus, the court credited T & L for the permanent partial disability benefits it had paid to McNutt and did not award him any additional indemnity benefits. It did, however, determine that he was entitled to vocational rehabilitation services. McNutt appeals.

## ASSIGNMENTS OF ERROR

McNutt assigns, summarized and restated, that the compensation court erred in (1) determining that his injury and disability was a scheduled member injury rather than finding him permanently totally disabled under the odd-lot doctrine, (2) failing to award an additional 50 percent in penalty and waiting time, and (3) failing to award attorney fees and interest.

## STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2018), an appellate court may modify, reverse, or set aside a compensation court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Aboytes-Mosqueda v. LFA Inc.*, 306 Neb. 277, 944 N.W.2d 765 (2020).

On appellate review, the factual findings made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Id*. In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the appellate court gives the successful party the benefit of every inference reasonably deducible from the evidence. *Id*.

As the trier of fact, the compensation court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Id*.

## ANALYSIS

McNutt's primary argument is that the compensation court erred in finding that he suffered a 10-percent permanent partial disability and thus was entitled to benefits under § 48-121(3) rather than finding that he was permanently totally disabled under the odd-lot doctrine and awarding him additional benefits pursuant to § 48-121(1). We first address whether there is sufficient competent evidence in the record to support the compensation court's determination that McNutt's injury was a scheduled member injury as opposed to a body as a whole injury. We conclude that the evidence is sufficient to support this decision.

Under Nebraska's workers' compensation statutes, an injury to the upper extremity constitutes a scheduled member injury. See *Bower v. Eaton Corp.*, 301 Neb. 311, 918 N.W.2d 249 (2018). Permanent total disability benefits are not generally available for a single scheduled member injury. *Id*. However, employees are not limited to benefits for a scheduled member injury when the effects of that injury have extended to other parts of the employee's body in a manner that impairs the employee's ability to work. *Id*.

The test for determining whether a disability is to a scheduled member or to the body as a whole is the location of the residual impairment, not the situs of the injury. *Stacy v. Great Lakes Agri Mktg.*, 276 Neb. 236, 753 N.W.2d 785 (2008). Although medical restrictions or impairment ratings are relevant to a workers' compensation claimant's disability, the trial judge is not limited to expert testimony to determine the degree of disability, but instead may rely on the testimony of the claimant. *Id.*

In the present case, the parties stipulated that McNutt suffered an injury to his left upper extremity. McNutt points out that Gallant assigned him a 10-percent upper extremity impairment rating and further stated in his report that this rating "correlates with a 6[-percent] whole person impairment rating." McNutt claims that because Gallant assigned him a whole person impairment rating, the compensation court should have categorized his injury as a whole body injury. To further support his argument, he asserts that there was evidence to support injury to his left hand in addition to his left upper extremity, such as Gallant's restriction that he avoid any activities requiring substantial grip strength. He also claims that as of March 2021, he was treated surgically for cubital tunnel syndrome for severe numbness in his left hand. The record lacks evidence of this complaint or procedure, however, because it occurred subsequent to the November 2020 trial.

The compensation court was permitted to disregard Gallant's whole person impairment rating if it elected to do so and to rely on McNutt's testimony, and it did, reasoning that the language of Gallant's report was the only evidence offered to support a whole body injury and noting that McNutt did not testify that he had any impairments or limitations to any part of his body other than the left arm. In fact, Gallant specifically found that the restrictions on McNutt's activities were attributable to the left shoulder injury only and not due to any cervical or neck problems and that McNutt did not have any significant cervical complaints or limitations at the time of Gallant's evaluations. Gallant further opined that McNutt's carpal tunnel syndrome was not related to the October 2017 work accident. Thus, the compensation court found that the whole person impairment rating was merely a conversion factor and did not support a finding of whole body injury. Based on the evidence in the record and the court's reasoning, we find that the court did not clearly err in determining that McNutt did not have a whole body injury, but instead, that he suffered from a scheduled member injury.

McNutt further asserts that even if his injury is categorized as a scheduled member injury, the compensation court still erred in failing to find that he was permanently totally disabled under the odd-lot doctrine. We find no clear error in the court's decision.

Subdivision (1) of section 48-121 sets the amount of compensation for total disability; subdivision (2) sets the amount of compensation for disability partial in character, except in cases covered by subdivision (3); and subdivision (3) sets out "schedule" injuries to specified parts of the body with compensation established therefor. *Broderson v. Federal Chemical Co.*, 199 Neb. 278, 258 N.W.2d 137 (1977). Disability under subdivisions (1) and (2) refers to loss of employability and earning capacity, and not to body function or medical loss alone. *Id.* Under subdivision (3), however, it is immaterial whether an industrial disability is present or not, for it was clearly the intent of the Legislature to fix the amount of the benefits for loss of specific members under subdivision (3) without regard to the extent of the subsequent disability suffered with respect to the particular work or industry of the employee. *Id.*

Despite this, McNutt argues that he should have been found to be totally disabled under the odd-lot doctrine. Under the odd-lot doctrine, total disability may be found in the case of workers who, while not altogether incapacitated for work, are so handicapped that they will not be employed regularly in any well-known branch of the labor market. *Lovelace v. City of Lincoln*, 283 Neb. 12, 809 N.W.2d 505 (2012). The essence of the test is the probable dependability with which claimant can sell his services in a competitive labor market, undistorted by such factors as business booms, sympathy of a particular employer or friends, temporary good luck, or the superhuman efforts of the claimant to rise above his crippling handicaps. *Id*.

We have affirmed the compensation court's judgment that McNutt suffered a single scheduled member injury to his left upper extremity, thus finding no error in the court's decision that McNutt was entitled to benefits under § 48-121(3). Disability as a basis for compensation under § 48-121(3) is determined by the "'loss of use of a body member,' not loss of earning power." *Lenz v. Central Parking System of Neb.*, 288 Neb. 453, 462, 848 N.W.2d 623, 629 (2014). Permanent total disability benefits are not generally available for a single scheduled member injury. *Stacy v. Great Lakes Agri Mktg.*, 276 Neb. 236, 753 N.W.2d 785 (2008).

Because we have found that McNutt is entitled to benefits for a scheduled member injury under § 48-121(3), whether he is unemployable or has suffered a loss of earning capacity pursuant to the odd-lot doctrine is immaterial. He is not entitled to additional benefits beyond those detailed in § 48-121(3). Accordingly, we affirm the compensation court's decision awarding McNutt compensation for a scheduled member injury and declining to find him permanently totally disabled.

McNutt also assigns that the compensation court erred in failing to award him a 50-percent waiting-time penalty and attorney fees and interest under Neb. Rev. Stat. § 48-125 (Cum. Supp. 2020). He admits, however, that the outcome of these two assigned errors is contingent upon the outcome of his first argument related to his permanent disability. In other words, he acknowledges that he would only be entitled to a waiting-time penalty and to attorney fees and interest if we agreed with his argument that he was permanently and totally disabled and entitled to additional compensation. Having rejected that argument, we also reject his final two assignments of error.

## CONCLUSION

The compensation court did not clearly err in finding that McNutt suffered a scheduled member injury to his left upper extremity and finding that he was entitled to benefits under § 48-121(3). We therefore affirm its decision.

AFFIRMED.